UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINIFRED JIAU,<br><br>   Petitioner/Plaintiff,<br><br> v.<br><br>RANDY L. TEWS, Warden,<br><br>   Respondent/Defendant. | Case No. 13-cv-04231-YGR (PR)<br><br>**ORDER GRANTING REQUEST TO CONVERT CASE INTO *BIVENS* ACTION; AND DISMISSING CLAIMS WITH LEAVE TO AMEND** |

## I. INTRODUCTION

This action originally was filed by Petitioner Winifred Jiau, a former federal prisoner, as a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner, who at the time she filed the instant petition was an inmate in the custody of the Federal Bureau of Prisons ("BOP"), alleged that Respondent unlawfully denied her request for transfer to a Residential Re-entry Center ("RRC").[1] Petitioner sought an Order directing the BOP to transfer her immediately to an RRC and requiring the BOP to consider the relevant statutory factors to determine the appropriateness of such a transfer. *See* Dkt. 1 at 1-2, 6.

The Court notes that since this action was filed, Petitioner obtained the relief she requested: transfer to an RRC. *See* Dkt. 19 at 2 (citing Dkt. 9). Furthermore, Petitioner has since been released from BOP custody. *Id.*

In an Order dated August 28, 2014, the Court granted Respondent's motion to dismiss the petition as moot. Because Petitioner's release from BOP custody was a result more favorable than the relief sought in the petition, the Court found that there was no longer a live controversy before it. Dkt. 23 at 2 (citing *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996)). Also in its August 28, 2014 Order, the Court denied Petitioner's motion to convert her petition to a *Bivens*[2] action

---

[1] RRCs are known as Residential Reentry Centers. Some are colloquially known as halfway houses.

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

United States District Court
Northern District of California

upon determining that she filed the instant action prior to exhausting administrative remedies. *Id.* (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Thereafter, this case was reopened when the Ninth Circuit reversed this Court's ruling denying Petitioner's motion to convert her petition to a *Bivens* action.[3] *See* Dkt. 27. Because the record was not developed fully, the Ninth Circuit stated that it could not determine "whether the district court properly denied the motion to convert based on [Petitioner's] failure to exhaust." *Id.* at 2-3. The Ninth Circuit thus vacated "the portion of the judgment denying [Petitioner's] motion to convert and remand[ed] for further proceedings, including, if necessary, further development of the record as to whether the government sought an extension [to file a response to the grievance] and whether [Petitioner] received notice of an extension." *Id.* at 3. The Ninth Circuit since has issued its mandate. Dkt. 31. The Court then directed Respondent to provide the aforementioned further briefing and also to file a renewed motion to deny Petitioner's motion to convert her petition to a *Bivens* action "if Respondent believe[d] that it is clear from the record that Petitioner filed the instant action prior to exhausting administrative remedies." *See* Dkt. 35. Respondent filed a response indicating he no longer opposes Petitioner's request on the ground that she failed to exhaust her administrative remedies but opposes the request on other grounds. Dkt. 36. Petitioner filed an opposition to Respondent's response. Dkt. 37.

Thus, the Court is now ready to rule on Petitioner's request to convert her petition into a *Bivens* action. Dkt. 9. Petitioner also has moved for leave to proceed *in forma pauperis* ("IFP"), which the Court construes to be her notice of intent to prosecute this action as a *Bivens* action with the higher filing fee of $400.00. Dkt. 33. The motion for leave to proceed IFP will be resolved in a separate written Order.

## II. DISCUSSION

### A. Background Facts and Summary of Claims

In June 2011, Petitioner was convicted of conspiracy to commit securities fraud and wire fraud crimes. Dkt. 1-1 at 10. She received a forty-eight-month prison sentence, which she served

---

[3] The Ninth Circuit did not reverse the portion of this Court's judgment dismissing Petitioner's 28 U.S.C. § 2241 petition as moot.

2

at the Federal Correctional Institution-Dublin ("FCI-Dublin"). *Id.*

In December 2012, Petitioner requested a review of her eligibility for a twelve-month pre-release placement in an RRC to assist her with positive reintegration into the community. *Id.* at 29, 35. The Unit Team at FCI-Dublin determined that, because Petitioner was serving a forty-eight-month sentence, it recommended a six-month RRC placement beginning on December 23, 2013. *Id.* at 20. Petitioner alleges that the Unit Team applied the five required statutory factors in determining whether to transfer her to an RRC, including consideration of her involvement in the Residential Drug Abuse Program ("RDAP") or Inmate Financial Responsibility Program ("IFRP"), as well as her chances of recidivism, family support, financial resources, professional licenses, general job skills, and a residence upon release. *See* Dkt. 1 at 2; Dkt. 1-1 at 35 (electronic communication showing list of factors Petitioner asserts she provided to Unit Team in December 2012 in support of her request for immediate RRC placement).

On April 23, 2013, Petitioner filed an appeal of the denial of her request for a twelve-month RRC placement. *Id.* at 30. On May 30, 2013, Respondent, who was the prison warden in 2013, denied her appeal, stating:

> The Unit Team has made an individualized determination regarding your RRC placement to address your transitional needs. Your Unit Team believes six months RRC placement is an appropriate amount in your case. You have education and employment experience and low risk of recidivism since you are 45 years and have no prior convictions. While you may not be employable in the public financial sector, your educational background and experience will aid in gaining some form of credible employment. Although your family support is limited in this country, six months in the RRC is an appropriate amount of time for an individual who has been incarcerated for less than 48 months.

*Id.* at 29. Petitioner then appealed Respondent's denial.

On June 27, 2013, BOP Regional Director Juan D. Castillo denied Petitioner's appeal, stating that the six-month placement was of "sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* at 42. Furthermore, Regional Director Castillo stated he "concur[red] with the Warden's response" and added as follows: "Institution staff utilized Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure, and the criteria set forth in the Second Chance Act of 2007 in making this

3

decision." *Id.* Dissatisfied with the Regional Director's response, Petitioner appealed to the BOP's Office of the General Counsel.

On August 16, 2013, the BOP's National Inmate Appeals, Central Office sent Petitioner a notice that her appeal was received on July 16, 2013, and advised her that that if she does not receive a "response within the time allotted for reply, including extension, [she] may consider the absence of a response to be a denial." *Id.* at 44. With an extension, the BOP had a total time frame of sixty days to respond to Petitioner's appeal.[4] 28 C.F.R. § 542.18. Petitioner's appeal was denied at the final level of agency review on September 23, 2013. Dkt. 13-1 at 12.

On September 12, 2013, Petitioner filed the instant action. Dkt. 1. She alleges that the BOP violated federal law by way of its "automatic denial of her request for placement in an RRC," as well as its treatment of Petitioner based on: (1) her status as "an inmate [who] was expelled from RDAP" (a drug treatment program); or (2) her "previous non-participation in IFRP" (a financial responsibility program). Dkt. 1 at 1. Petitioner also appears to allege various constitutional violations. Petitioner alleges that BOP violated "the Cruel and Unusual Punishment Clause of the Eight[h] Amendment, due process, Ex Post Facto clause, and the right to equal protection of the Fourteenth Amendment . . . ." *Id.* at 2. Petitioner further alleges that she: (1) was an "alcohol abuser before the arrest"; (2) was expelled "unconstitutionally" from RDAP; (3) suffers from a cardiac problem that has not been diagnosed properly; (4) had a record showing "no community resources, no family support[], no financial resources, no general job skills and no release residence"; and (5) received an unfair determination from the BOP that she is at a low risk of recidivism. *Id.* at 4. Petitioner also claims that the BOP retaliated against her for her prior lawsuits. *Id.* at 6 (citing Case No. 12-4193 SI (PR) (dismissing as unexhausted her federal petition under 28 U.S.C. § 2241 relating to her alleged wrongful expulsion from RDAP) and Case No. 13-248 WHA (PR) (summary judgment granted on claim of alleged violation of constitutional rights

---

[4] Respondent states "the BOP has not found that it sent [Petitioner] a separate letter discussing the extension [to file an appeal response]." Dkt. 36 at 2 n.1. Therefore, Respondent claims "no other documents" exist to add to the record on the issue of whether the government sought such an extension and whether Petitioner received notice of an extension. *See id.* at 2. As a result, Respondent no longer opposes Petitioner's request (to convert this action to a *Bivens* action) on the ground that she failed to exhaust her administrative remedies. *See id.* at 2, 6.

4

1  by expelling her from RDAP)).

### B. Request to Convert to *Bivens* Action

As mentioned above, Petitioner requests that the Court convert her petition into an action pursuant to *Bivens*. Dkt. 9. Respondent since has advised the Court that it no longer opposes Petitioner's request on the ground that she failed to exhaust her administrative remedies. Dkt. 36 at 2, 6; *see infra* note 4. However, Respondent objects on "other grounds" to the Court converting this action to a *Bivens* action, and he includes arguments concerning an alleged lack of subject matter jurisdiction, as well as specific challenges to Petitioner's claims. *See id.* at 6.

First, Respondent claims that, to the extent Petitioner seeks to name the BOP as a defendant (based on her claim challenging the BOP's "automatic" denial of her one-year RRC placement), the Court then would lack subject matter jurisdiction. Dkt. 26 at 6-7. While the Supreme Court has declined to extend *Bivens* remedies from individuals to federal agencies, *see F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994), this Court finds Respondent's argument unavailing, because Petitioner did ***not*** name the BOP but instead named ***Warden Tews*** in this action. The record shows that Warden Tews denied Petitioner's appeal at the first level of agency review. Dkt. 1-1 at 29. Second, Respondent's remaining objections to converting this action to a *Bivens* action relate to challenges to the specific claims based on an alleged failure to state a claim for relief. However, such an argument is not proper at this stage, and instead should be handled ***after*** the action has been converted to a *Bivens* action. Furthermore, even if Petitioner fails to state cognizable claims for relief successfully at this juncture, the proper course of action would be to allow her to amend her claims, if appropriate, as explained below.

Accordingly, the Court GRANTS Petitioner's request to convert this action to a *Bivens* action. Dkt. 9. The Clerk of the Court is therefore DIRECTED to CONVERT this case into a civil rights action brought under the authority of *Bivens*, with Ms. Jiau as Plaintiff (hereinafter "Plaintiff") and Warden Tews as Defendant (hereinafter "Defendant").

### C. Review of Claims

#### 1. Standard of Review

A federal court must engage in a preliminary screening of any case in which a prisoner

5

seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This requires more than a "the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals" of a cause of action, supported by conclusory statements, are insufficient. *Id.* A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To comport with Rule 8, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Plausibility is "a context-specific" determination "that requires . . . judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to "'show[] that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

*Pro se* complaints are construed liberally, in the light most favorable to the pleader, and all allegations of material fact are accepted as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A *pro se* prisoner's complaint is "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. Leave to amend should be granted unless amendment appears futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

*Bivens* recognizes "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (citing *Bivens*, 403 U.S. at 392-97). *Bivens* allows a claimant "to hold federal officers individually liable for constitutional violations." *Starr v. Baca*, 652 F.3d 1202, 1206 (9th Cir. 2011) (emphasis added); *see Malesko*, 534 U.S. 61, 70 (2001).

To state a cognizable *Bivens* claim, the plaintiff must allege that: (1) a right secured under the United States Constitution was violated, and (2) the violation was committed by a federal actor. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991); *see also Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988); *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1988). A defendant is not responsible in a *Bivens* action unless the facts establish the defendant's "personal involvement" in the alleged constitutional deprivation or a "causal connection" between the defendant and the alleged constitutional violation. *See Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). *Bivens* actions do not allow for the imposition of vicarious liability, stating a claim against a government official in his or her individual capacity for purposeful discrimination requires pleading that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948.

Finally, the only available relief in a *Bivens* action is an award of money damages for any injuries caused by a defendant acting in his or her individual capacity. *Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1093-96 (9th Cir. 2016).

### 2. Claims Against Defendant in His Official Capacity or Against United States and Federal Agencies

To the extent that Plaintiff names Defendant in his official and individual capacities, or otherwise seeks to name the United States and its agencies, including the BOP and FCI-Dublin, the Court notes that such claims must be dismissed. First, as mentioned above, a "*Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *See Daly-Murphy*, 837 F.2d at 355. Second, also mentioned above, the Supreme Court has declined to extend *Bivens* remedies from individuals to federal agencies. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). Therefore, any *Bivens* claims alleged against Defendant Tews in his *official* capacity, or any claims that Plaintiff seeks to allege against the United States, BOP, and FCI-Dublin will be dismissed with prejudice.

### 3. Remaining Claims Against Defendant in His Individual Capacity

Construed liberally, Plaintiff's allegations could be construed as a claim that Defendant

Tews violated her constitutional rights by failing to approve her request to be transferred to a RRC. *See* Dkt. 1 at 3; Dkt. 1-1 at 29. Specifically, Plaintiff mentions violations of "the Eight[h] Amendment, due process, Ex Post Facto clause, and the right to equal protection under the Fourteenth Amendment." Dkt. 1 at 2. She also claims that the denial of her RRC transfer request was the result of retaliation by Defendant due to her previous lawsuits. *Id.*

### a. Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and conditions of confinement. *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions-of-confinement claim, and only those deprivations denying the minimal, civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *see Farmer v. Brennan,* 511 U.S. 825, 834 (9th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); and (2) the prison official must possess a sufficiently culpable state of mind, *see id.* (citing *Wilson,* 501 U.S. at 297). In prison-conditions cases, the necessary state of mind is one of "deliberate indifference," i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 834, 837. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See id.* at 837. In determining whether the objective component has been met, the Court must focus on discrete and essential human needs such as health, safety, food, and warmth. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Courts may not find Eighth Amendment violations based on the "totality of conditions" at a prison, but instead should require evidence of specific conditions amounting deprivations of essential food, medical care, sanitation, and safety. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 n.3 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472, 481-84 (1995).

Here, Plaintiff does not allege that she was denied the minimal, civilized measure of life's

necessities. Nor does she provide evidence of deprivations of any of the aforementioned categories. Rather, she complains of being denied a particular prison transfer. Plaintiff cannot state an Eighth Amendment claim on these grounds, because the deprivation complained of is not sufficiently extreme. *Cf. Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983) (Prisoners have no constitutional right to incarceration in a particular institution.); *see also Tyler v. Coggins*, 2012 WL 285023, *2 (E.D. Cal. Jan. 31, 2012) (finding denial of requested RRC transfer did not constitute sufficiently serious deprivation to satisfy first element of Eighth Amendment claim); *Seidenfeld v. Rosales*, 2011 WL 835782, *2 (C.D. Cal. Jan. 20, 2011) (finding denial of entry into RDAP did not amount to adequate deprivation with regard to Eighth Amendment claim).

Accordingly, Plaintiff's Eighth Amendment claim is DISMISSED WITH PREJUDICE, because refusing a requested RRC transfer cannot constitute a serious deprivation sufficient to satisfy the first element of Plaintiff's Eighth Amendment claim. No useful purpose would be served by granting leave to amend, and therefore the dismissal is without leave to amend.

### b. Due Process Clause

The Due Process Clause protects against the deprivation of liberty without due process of law. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L.Ed.2d 174 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff first must establish the existence of a liberty interest for which the protection is sought. *Id.* Liberty interests may arise from the Due Process Clause itself, or from an expectation or interest created by prison regulations. *Id.* The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." *Id.* The existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin*, 515 U.S. at 481-84. Such liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

The Fifth Amendment itself provides no liberty interest in a prisoner's desired location of incarceration. As mentioned above, the law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility, even though the degree of confinement in one facility

9

may be quite different from that in another. *See Olim*, 461 U.S. at 244-45; *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (concluding that discretionary determinations regarding conditions of confinement do not create due process rights).

Here, among her allegations in this action, Plaintiff asserts that Defendant violated 18 U.S.C. §§ 3621(b), 3624(c) by refusing her RRC transfer request and thereby violated her due process rights. The nature of the deprivation, rather than the ***wording*** of the statute itself, is the focus of consideration when determining whether a statute creates a liberty interest. *See Sandin*, 515 U.S. at 481-84.

First, Petitioner claims that the BOP failed to place her appropriately in accordance with the five criteria set forth in 18 U.S.C. § 3621(b). *See* Dkt. 1 at 6; *see Rodriguez v. Smith*, 541 F.3d 1180 (9th Cir. 2008). She argues that proper consideration of the statutory criteria in section 3621(b) requires the BOP to redesignate her to the RRC. Under 18 U.S.C. § 3621(b), the BOP has the authority to designate the location of an inmate's imprisonment. *Rodriguez*, 541 F.3d at 1182. That section provides:

> The [BOP] shall designate the place of the prisoner's imprisonment. The [BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the BOP determines to be appropriate and suitable, considering --
>
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence --
>     (A) concerning the purposes for which the sentence
>         to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional
>         facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The [BOP] may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The [BOP] shall make available appropriate substance abuse treatment for each prisoner the BOP determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a

10

> community corrections facility shall have no binding effect on the authority of the BOP under this section to determine or change the place of imprisonment of that person.

18 U.S.C. § 3621(b). In addition, the BOP has an affirmative duty to consider placing the inmate in an RRC or similar pre-release alternative towards the end of the inmate's prison term. *Rodriguez*, 541 F.3d at 1184 (citing 18 U.S.C. § 3624(c)). The BOP also has the discretion to transfer inmates to an RRC at any time. *See id.* at 1182, 1185-89. Federal courts lack jurisdiction to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621. *Reeb v. Thomas*, 636 F.3d 1224, 1226-27 (9th Cir. 2011) (recognizing that the plain language of 18 U.S.C. § 3625 specifically limits judicial review). Federal judicial review does remain available, however, for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority. *Id.* at 1227.

Meanwhile, section 3624(c)(1) provides as follows:

> (c) Prerelease custody --
>
> (1) In general -- The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). The statute compels the BOP to consider a pre-release term towards the end of a prisoner's sentence, but ultimately grants the BOP discretion in the matter. Essentially, Plaintiff contends that the BOP should exercise its authority in her case and transfer her to an RRC. Thus, Plaintiff complains of being forced to remain in a typical federal correctional facility. However, Plaintiff pleads no facts indicating that her confinement "imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Myron*, 476 F.3d at 718. Being forced to remain in a general prison facility embodies the typical hardship of confinement. Plaintiff fails to allege facts to support a claim that ***atypical and significant*** hardships were imposed on her within the meaning of *Sandin*. *See Sandin*, 515 U.S. at 484. Thus, she fails adequately to allege the existence of a liberty interest entitling her to due process.

11

1          Accordingly, Plaintiff fails to state a claim. While Plaintiff cannot state a cognizable due process claim based on her perceived right to be transferred to an RRC, the Court will provide one opportunity to amend her due process claim. Should Plaintiff choose to amend, she must identify the source of her liberty interest clearly and explain how the named Defendant denied her due process.

### c. Ex Post Facto Clause

The Ex Post Facto Clause prohibits laws that make more burdensome the punishment for a crime, after its commission. *Weaver v. Maass*, 53 F.3d 956, 959 (9th Cir. 1995). A law violates the Ex Post Facto Clause if it is: (1) retrospective, applying to events occurring before its enactment; and (2) disadvantageous to the offender affected by it. *Id.*

Here, Plaintiff's allegations merely state a conclusory constitutional violation under the Ex Post Facto Clause. Without any further elaboration, such an allegation amounts to an insufficient conclusory assertion. *Iqbal*, 556 U.S. at 678. Accordingly, this claim is DISMISSED. However, Plaintiff may reassert this claim by filing an amended complaint if she can allege a violation of the Ex Post Facto Clause in good faith.

### d. Equal Protection Clause

Plaintiff alleges that Defendant's denial of her RRC transfer violated her "right to equal protection of the Fourteenth Amendment." Dkt. 1 at 2. Again, without any further elaboration, such an allegation amounts to an insufficient conclusory assertion. *Iqbal*, 556 U.S. at 678.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). When challenging treatment with regard to other prisoners, and in order to present an equal protection claim, a prisoner must allege that his or her treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials). Unless a prison policy explicitly treats inmates differently based on race, a claim of racial discrimination

under the Equal Protection Clause requires demonstration of discriminatory intent. *Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Jeffers v. Gomez*, 267 F.3d 895, 913-14 (9th Cir. 2001).

Here, Plaintiff makes the conclusory allegation that Defendant violated her right to equal protection by denying her RRC transfer request, but she fails to allege any facts showing that the BOP treated similarly-situated inmates differently. Thus, to the extent that Plaintiff seeks to allege an equal protection violation, such a claim must necessarily fail. *See Reeb*, 636 F.3d 1228 n.4 (citing *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999) (finding that equal protection violation requires petitioner to show that similarly situated people are being treated differently)).

Accordingly, the Court finds that Plaintiff does not state a cognizable equal protection claim, and this claim is DISMISSED. However, Plaintiff may reassert her equal protection claim by filing an amended complaint if she can allege in good faith, and by citing actual examples that are subject to proof, that Defendant handled the denial of her RRC transfer request differently than he handled the requests of similarly situated prisoners.

### e. First Amendment

Plaintiff claims that the denial of her RRC transfer request was the result of retaliation by Defendant due to her previous lawsuits. Dkt. 1 at 2. Although prison officials are invested with broad discretion to deny transfer requests, they may not retaliate against inmates for the exercise of their First Amendment rights. However, a retaliation claim is not stated where: (1) the prisoner does not allege that the defendants' actions caused the prisoner some injury, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); or (2) in the case of an alleged retaliatory transfer, if the decision may be upheld on a constitutionally valid basis, *Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir. 1984). Here, Plaintiff's allegations do not establish that she suffered a cognizable injury when she was denied the RRC transfer, and there is no indication that prison officials—who denied Plaintiff's request for RRC transfer and subsequent appeal—would have granted Plaintiff a transfer even if she had not filed the previous lawsuits, *see id.* (no retaliatory transfer claim stated where administrative reasons relied on by defendants would have caused them to transfer prisoner whether or not they also entertained thoughts of retaliation). Accordingly, Plaintiff's retaliation claim is without merit and is DISMISSED WITH PREJUDICE. No useful purpose would be

13

served by granting leave to amend, and therefore the dismissal is without leave to amend.

**III. CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. The Court GRANTS Petitioner's request to convert this action to a *Bivens* action. Dkt. 9. The Clerk is DIRECTED to CONVERT this case into a civil rights action brought under the authority of *Bivens*, with Ms. Jiau as Plaintiff and Warden Tews as Defendant.

2. Plaintiff's allegations in this action do not state a claim for relief. However, as explained in detail above, the Court GRANTS Plaintiff an opportunity to amend his claims relating to the following: Due Process, Equal Protection, and Ex Post Facto Clauses. If Plaintiff opts to amend, she must demonstrate that the alleged acts resulted in a deprivation of her constitutional rights. *Iqbal*, 129 S. Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555 (2007)). Plaintiff also must demonstrate that each named Defendant personally participated in a deprivation of her rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that, although she has been given the opportunity to amend, it is not for the purposes of adding new claims. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should read this Order carefully and focus her efforts on curing the deficiencies set forth above.

Finally, Plaintiff must clearly state in her amended complaint what relief she is seeking. She must keep in mind that the only available relief in a *Bivens* action is an award of money damages for any injuries caused by a defendant acting in his or her individual capacity. *See Ministerio Roca Solida*, 820 F.3d at 1093-96. Again, Plaintiff may state a claim for monetary damages against individual federal officers, only if she is able identify which officers are responsible for the alleged constitutional violations and link any named defendants to such violations.

3. Within **twenty-eight (28) days** from the date of this Order, Plaintiff shall file her Amended Complaint as set forth above. Plaintiff must use the attached civil rights form, write the case number for this action—Case No. C 13-4231 YGR (PR)—on the form, clearly label the

14

complaint "Amended Complaint," and complete all sections of the form. Because the Amended Complaint completely replaces the original complaint, Plaintiff must include in it all the claims she wishes to present. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.), *cert. denied*, 506 U.S. 915 (1992). She may not incorporate material from the original complaint by reference. If Plaintiff wishes to attach any additional pages to the civil rights form, she shall maintain the same format as the form. Plaintiff's Amended Complaint shall not exceed **forty (40) pages** in length. **Plaintiff's failure to file her Amended Complaint by the twenty-eight-day deadline or to correct the aforementioned deficiencies outlined above will result in the dismissal of this action without prejudice.**

4. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11, a party proceeding *pro se* whose address changes while an action is pending must file a notice of change of address promptly specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

5. The Clerk shall send Plaintiff a blank civil rights form along with a copy of this Order.

IT IS SO ORDERED.

Dated: August 15, 2017

YVONNE GONZALEZ ROGERS
United States District Judge