UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINIFRED JIAU,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RANDY L. TEWS,<br><br>　　　　Defendant. | Case No. 13-cv-04231-YGR (PR)<br><br>**ORDER OF SERVICE** |

## I. INTRODUCTION

This action originally was filed by Winifred Jiau, a former federal prisoner, as a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Plaintiff, who at the time she filed the instant action was an inmate in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Corrections Institute in Dublin, California ("FCI-Dublin"), alleged that she was unlawfully denied her request for transfer to a Residential Re-entry Center ("RRC")[1] in December 3, 2012. The Court notes that Plaintiff was eventually placed in an RRC around a year later, on December 23, 2013. Dkt. 48 at 10. She has since been released from BOP custody, as of June 2014. *Id.* at 1.

In an Order dated August 15, 2017, the instant action was converted into a *pro se* action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Dkt. 38. She has been granted leave to proceed *in forma pauperis.* Dkt. 39.

The operative complaint in this action is the second amended complaint in which she names Defendant Randy L. Tews, who is the warden at FCI-Dublin. Dkt. 48 at 2. Plaintiff seeks monetary damages. *Id.* at 20.

Venue is proper because certain events giving rise to the claims are alleged to have occurred at FCI-Dublin, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

---

[1] RRCs are known as Residential Re-entry Centers. Some are colloquially known as "halfway houses."

## II. DISCUSSION

### A. Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). *Pro se* pleadings must be liberally construed, however. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under *Bivens* and its progeny, a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor. *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) (42 U.S.C. § 1983 and *Bivens* actions are identical save for replacement of state actor under section 1983 by federal actor under *Bivens*).

### B. Legal Claims

Because this action involves the alleged denial of Plaintiff's request to be transferred to an RRC, the Court includes a brief background on the authority of the BOP to place an inmate in an RRC.

The BOP has the authority, under 18 U.S.C. § 3261(b), to designate the location of an inmate's imprisonment. 18 U.S.C. § 3261(b). Prior to December 13, 2002, the BOP's policy was to exercise its discretion in allowing prisoners to serve part or all of their imprisonment in an RRC. *Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008). As of December 13, 2002, the Department of Justice Office of Legal Counsel ended that practice by issuing a legal opinion that section 3621(b) does not authorize inmate placement in an RRC for an entire term, for the reason that such placement does not constitute imprisonment. *Id.* In the light of the above-referenced opinion, the BOP, on December 20, 2002, changed its policy, by limiting an inmate's eligibility for placement in an RRC to the shorter of either six months or the final ten percent of the inmate's sentence. *Id.* Subsequently, that policy was invalidated by the First and Eighth Circuits, which

1  found the policy failed to recognize the BOP's discretion to transfer inmates at any time to an

2  RRC. *Id.* In response, the BOP decided to "exercise its discretion categorically to limit inmates'

3  community confinement to the last ten percent of the prison sentence being served, not to exceed

4  six months." *Id.* (quoting 69 Fed. Reg. 51213). In 2005, that BOP rule was codified at 28 C.F.R.

5  §§ 570.20 and 570.21. *Id.*

6  On April 9, 2008, the Second Chance Act was signed into law, authorizing the BOP to

7  consider placing inmates in an RRC for up to the final twelve months of their sentence. 18 U.S.C.

8  § 3624. On September 4, 2008, the Ninth Circuit decided *Rodriguez*, *see supra*, holding the rules

9  published by the BOP at 28 C.F.R. §§ 570.20 and 570.21 conflicted with the Congressional intent

10 of 18 U.S.C. § 3621(b), which sets forth five factors the BOP must consider when making

11 placement and transfer decisions. *See Rodriguez*, 541 F.3d at 1186. As determined by the Ninth

12 Circuit, inmates must be considered for RRC placement based on the five factors of section

13 3621(b) and consequently, the BOP cannot reference 28 C.F.R. §§ 570.20 and 570.21 in

14 considering an inmate for RRC placement. *Id.* at 1189.

15 Plaintiff claims that "[o]n or about October 4, 2011, [she] was sentenced to a forty eight-

16 month term of incarceration for the offense of security fraud." Dkt. 48 at 3. On December 19,

17 2011, she arrived at FCI-Dublin to complete her sentence. *Id.* Plaintiff claims that in August

18 2012, she was "classified by the [BOP] Central Monitoring Case ("CMC") as 'community

19 custody.'" *Id.*

20 Plaintiff claims that, according to the Second Chance Act, she would have become eligible

21 for up to twelve-month pre-release placement in an RRC. *Id.* Plaintiff claims that she believed

22 her eligibility to serve her sentence in an RRC started on or about June 2013. *Id.* Thus, Plaintiff

23 sought to be transferred to an RRC on or about December 2012. *Id.* She claims that on December

24 3, 2012, her request to be transferred to an RRC "was denied within [Defendant's] authority." *Id.*

25 at 3, 5.

26 Plaintiff's allegations could be construed liberally as a claim that Defendant violated her

27 constitutional rights by failing to approve her request to be transferred to an RRC. *See* Dkt. 48.

28 Specifically, in her second amended complaint, Plaintiff raises violations of the Due Process

Clause, the Ex Post Facto Clause, and the right to equal protection under the Fourteenth Amendment.[2] *Id.*

### 1. Due Process Clause

The Due Process Clause protects against the deprivation of liberty without due process of law. *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L.Ed.2d 174 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Id*. Liberty interests may arise from the Due Process Clause itself, or from an expectation or interest created by prison regulations. *Id*. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." *Id*. The existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). Such liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484; *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). The Fifth Amendment itself provides no liberty interest in a prisoner's desired location of incarceration. As mentioned above, the law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility, even though the degree of confinement in one facility may be quite different from that in another. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that discretionary determinations regarding conditions of confinement do not create due process rights).

---

[2] Plaintiff also attempts to reassert her Eighth Amendment claim based on the denial of her RRC transfer request and her First Amendment claim that such a denial was the result of retaliation by Defendant due to her previous lawsuits. Dkt. 48 at 16-19. However, the Court dismissed both claims with prejudice in its August 15, 2017 Order. *See* Dkt. 38 at 8-9, 13-14. The Court also specified that it granted Plaintiff "an opportunity to amend [her] claims relating to the following: Due Process, Equal Protection, and Ex Post Facto Clauses." *Id.* at 14. Furthermore, in its January 19, 2018 Order Granting Plaintiff's Motion for Leave to File Second Amended Complaint, the Court noted that Plaintiff shall refer to the Court's August 15, 2017 Order "which indicate[d] that 'although she has been given the opportunity to amend, it is not for the purposes of adding new claims.'" Dkt. 46 at 2 (citing Dkt. 38 at 14). Plaintiff was specifically instructed that if she "wishe[d] to raise new claims, she may do so in *a separate new Bivens action*." *Id.* (emphasis in original). Therefore, the Court need not address her First and Eighth Amendment claims.

1  In its August 15, 2017 Order, the Court instructed Plaintiff to "identify the source of her liberty interest clearly and explain how the named Defendant denied her due process." Dkt. 38 at 11-12. Moreover, the Court directed Plaintiff to allege facts to support a claim that "atypical and significant hardships" were imposed on her within the meaning of *Sandin*. *Id.* at 11.

In her second amended complaint, Plaintiff identifies the source of her liberty interest: 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Dkt. 48 at 12-13. Specifically, Plaintiff alleges that Defendant denied her right to due process by "fail[ing] to conduct [her] pre-release review by utilizing [the] five-factor analysis mandated by 18 U.S.C. § 3621(b) properly," *id.* at 12, and that the BOP should have exercised its authority granted in 18 U.S.C. § 3624(c) to authorize her transfer to an RRC, *id.* at 3-4, 12-13. Plaintiff further alleges that Defendant relied on "false information" and classified her as having a "low chance of recidivism" in order to exclude her from being granted the 12-month RRC placement. *Id.* at 5. She claims that, to the contrary, she has a *high* chance of recidivism given her lack of family support, financial resources, general job skills, and other factors. *Id*. Thus, she claims that Defendant "supervised others conducting [the] RRC determination by [creating] false information and [a falsified] recidivism risk level to exclude her from getting [the] 12-month RRC placement." *Id.* Plaintiff further claims that other similarly situated inmates or inmates in better financial and health conditions were allowed placement in the RRC. *Id.* Plaintiff alleges that she suffered from a "worsening cardiac problem and serious depression" as her heart failed on August 21, 2012, at which time she was rushed to the emergency room. *Id.* She claims that her "poor health condition limited her employment opportunities," and she "requested more time and medical assistance to stabilize her condition for a 12-month RRC [placement]." *Id.* at 6. She adds that she "submitted her extraordinary reentry needs to Defendant and his office in multiple written requests between December 2012 and April 2013." *Id.* Finally, Plaintiff alleges that Defendant also assigned her a "hard labor" position in a "janitorial [position] in [a] U.S. Army base" in August 2013 despite her medical condition, and after the army supervisor dismissed her due to her heart condition she was "punished" with two disciplinary charges. *Id*. at 11.

Based on the aforementioned allegations, the Court finds that Plaintiff has identified the

5

source of her liberty interest and supported her claim that "atypical and significant hardships" were imposed on her based on Defendant's denial of her request to be transferred to an RRC. Therefore, liberally construed, Plaintiff's allegations state a cognizable Due Process claim, and Plaintiff may therefore proceed against Defendant on this claim.

### 2. Ex Post Facto Clause

The Ex Post Facto Clause prohibits laws that make more burdensome the punishment for a crime, after its commission. *Weaver v. Maass*, 53 F.3d 956, 959 (9th Cir. 1995). A law violates the Ex Post Facto Clause if it is: (1) retrospective, applying to events occurring before its enactment; and (2) disadvantageous to the offender affected by it. *Id*.

Plaintiff has reasserted her claim that Defendant has violated her rights under the Ex Post Facto Clause in her second amended complaint with further elaboration on the facts. Specifically, Plaintiff alleges Defendant violated her rights under the Ex Post Facto Clause by continuing to deduct restitution payments from her prison salary through the Inmate Financial Responsibility Program and forcing her to participate in such a program by using it as a reason to deny her request to be transferred to an RRC. Dkt. 48 at 7-8, 14-15. Accordingly, this Ex Post Facto Clause claim may proceed against Defendant.

### 3. Equal Protection Clause

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The equal protection component of the Due Process Clause of the Fifth Amendment imposes a similar obligation on the federal government. *High Tech Gays v. Defense Indus. Security Clearance Office*, 895 F.2d 563, 570-71 (9th Cir. 1990). When challenging treatment with regard to other prisoners, and in order to present an equal protection claim, a prisoner must allege that his or her treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials). Unless a prison policy explicitly treats inmates differently

based on race, a claim of racial discrimination under the Equal Protection Clause requires demonstration of discriminatory intent. *Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Jeffers v. Gomez*, 267 F.3d 895, 913-14 (9th Cir. 2001).

Pursuant to the Court's instructions in its August 15, 2017 Order, Plaintiff was directed to reassert her equal protection claim with citations to specific examples in order to show that Defendant "handled the denial of her RRC transfer request differently than he handled the requests of similarly situated prisoners." *See* Dkt. 38 at 13.

In her second amended complaint, Plaintiff claims that she was "treated differently from other inmates with similar education and employment experience, without [any] prior conviction, but that the different treatment was not rationally related to a legitimate government interest." Dkt. 48 at 15. Specifically, Plaintiff alleges that she was convicted of securities fraud, *id.* at 3, and that she lost her professional license, *id.* at 5, which indicate that she most likely worked in the financial industry and had a post-graduate degree. Plaintiff alleges that the "other similarly situated inmates, and inmates with homes to go to or with financial support[] from their families were given more than 6-month RRC time." *Id.* at 6. For example, Plaintiff states an inmate named Nicole Song was also a single woman who worked in the financial industry with a post-graduate degree, and Ms. Song received more than a six-month placement in an RRC. *Id.* Plaintiff further claims that another inmate named Yvonne Rowland, who worked in the financial industry with a post-graduate degree, was placed in RRC for more than six months as well. *Id.* Finally, Plaintiff claims that another inmate named Amy Schloemann worked in the financial industry with a post-graduate degree and received an RRC placement of more than six month. *Id*.

It appears that Plaintiff is not alleging a violation of equal protection based on race or another suspect classification, but on a "class of one" claim. Where state action, or in this case *federal* action, does not implicate a fundamental right or a suspect classification, Plaintiff can establish an equal protection "class of one" claim by alleging facts from which it can be inferred that the state or *federal* actor intentionally treated her differently than other similarly situated persons without a rational basis. *Cf. Gerhart v. Lake County Montana*, 637 F.3d 1013, 1020 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

7

Here, liberally construed, Plaintiff has alleged sufficient facts to show that Defendant intentionally treated her differently than other similarly situated inmates without a rational basis. Accordingly, Plaintiff may proceed with her equal protection claim against Defendant.

## III. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the second amended complaint and all attachments thereto (dkt. 48), and a copy of this Order to **Defendant FCI-Dublin Warden Randy L. Tews**. The Clerk also shall send a copy of the summons and second amended complaint to Defendant's counsel, the United States Attorney for the Northern District of California, and to the Attorney General of the United States in Washington, D.C. *See* Fed. R. Civ. P. 4(i). Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

2. Defendant is cautioned that Rule 4 of the Federal Rules of Civil Procedure requires Defendant to cooperate in saving unnecessary costs of service of the summons and second amended complaint. Pursuant to Rule 4, if Defendant, after being notified of this action and asked by the court, on behalf of Plaintiff, to waive service of the summons, fail to do so, Defendant will be required to bear the cost of such service unless good cause be shown for Defendant's failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendant had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendant will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendant is asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendant has been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

3. Defendant shall answer the second amended complaint in accordance with the

8

Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

      a. No later than **sixty (60) days** from the date the answer is due, Defendant shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[3] notice so that Plaintiff will have fair, timely and adequate notice of what is required of her in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the Court notes that under the current law of the circuit, in the rare event that a failure to exhaust is clear on the face of the second amended complaint, Defendant may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the second amended complaint, Defendant must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendant is entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

If Defendant is of the opinion that this case cannot be resolved by summary judgment, Defendant shall so inform the court prior to the date the summary judgment motion is due. All

---

[3] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

9

1 papers filed with the court shall be promptly served on Plaintiff.

2             b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendant no later than **twenty-eight (28) days** after Defendant's motion is filed.

            c.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your second amended complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

            Plaintiff also is advised that—in the rare event that Defendant argues that the failure to exhaust is clear on the face of the second amended complaint—a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents— documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your second amended complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in

considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendant's obligation to serve similar notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

        d.    Defendant shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

        e.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

4. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the court pursuant to Rule 30(a)(2) is hereby granted to Defendant to depose Plaintiff and any other necessary witnesses confined in prison.

5. All communications by Plaintiff with the Court must be served on Defendant or his counsel, once counsel has been designated, by mailing a true copy of the document to them.

6. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the court has been returned to the court as not deliverable, and (2) the court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

7. Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

IT IS SO ORDERED.

Dated: July 10, 2018

                                          YVONNE GONZALEZ ROGERS
                                          United States District Judge

11