WINIFRED JIAU,

          Plaintiff,

    v.

RANDY L. TEWS,

          Defendant.

Case No. 13-cv-04231-YGR (PR)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

This action originally was filed by Winifred Jiau, a former federal prisoner, as a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Plaintiff, who at the time she filed the instant action was an inmate in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Corrections Institute in Dublin, California ("FCI-Dublin"), alleged that she was unlawfully denied her request for transfer to a Residential Re-entry Center ("RRC")[1] on December 3, 2012. The Court notes that Plaintiff was eventually placed in an RRC around a year later, on December 23, 2013. Dkt. 48 at 10.[2] She has since been released from BOP custody, as of June 2014. *Id.* at 1.

In an Order dated August 15, 2017, the instant action was converted into a *pro se* action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Dkt. 38. She has been granted leave to proceed *in forma pauperis*. Dkt. 39.

The operative complaint in this action is the second amended complaint in which she names Defendant Randy L. Tews, who is the warden at FCI-Dublin. Dkt. 48 at 2. Plaintiff seeks monetary damages. *Id.* at 20.

Before the Court is Defendant's motion for judgment on the pleadings pursuant to Federal

---

[1] Some RRCs are colloquially known as halfway houses.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

Rule of Civil Procedure 12(c), or alternatively, for summary judgment pursuant to Rule 56. Dkt. 60. As the Court considers matters outside the pleadings, Defendant's pending dispositive motion will be treated as one for summary judgment.[3] *See* Fed. R. Civ. P. 12(b). Plaintiff opposes the motion, and Defendant has filed a reply. Dkts. 62, 63. For the reasons discussed below, the Court GRANTS Defendant's motion for summary judgment.

## II. BACKGROUND

### A. Authority of BOP To Place an Inmate in an RRC

The BOP has the authority, under 18 U.S.C. § 3621(b), to designate the location of an inmate's imprisonment. 18 U.S.C. § 3621(b). Because this action involves the alleged denial of Plaintiff's request to be transferred to an RRC, the Court includes a brief background on the authority of the BOP to place an inmate in an RRC, as taken from the Court's July 10, 2018 Order of Service. *See* Dkt. 50.

> Prior to December 13, 2002, the BOP's policy was to exercise its discretion in allowing prisoners to serve part or all of their imprisonment in an RRC. *Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008). As of December 13, 2002, the Department of Justice Office of Legal Counsel ended that practice by issuing a legal opinion that section 3621(b) does not authorize inmate placement in an RRC for an entire term, for the reason that such placement does not constitute imprisonment. *Id.* In the light of the above-referenced opinion, the BOP, on December 20, 2002, changed its policy, by limiting an inmate's eligibility for placement in an RRC to the shorter of either six months or the final ten percent of the inmate's sentence. *Id.* Subsequently, that policy was invalidated by the First and Eighth Circuits, which found the policy failed to recognize the BOP's discretion to transfer inmates at any time to an RRC. *Id.* In response, the BOP decided to "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." *Id.* (quoting 69 Fed. Reg. 51213). In 2005, that BOP rule was codified at 28 C.F.R. §§ 570.20 and 570.21. *Id.*

> On April 9, 2008, the Second Chance Act was signed into law, authorizing the BOP to consider placing inmates in an RRC for up to the final twelve months of their sentence. 18 U.S.C. § 3624. On September 4, 2008, the Ninth Circuit decided *Rodriguez, see supra*, holding the rules published by the BOP at 28 C.F.R. §§ 570.20 and 570.21 conflicted with the Congressional intent of 18 U.S.C. § 3621(b), which sets forth five factors the BOP must consider when

---

[3] Because the Court is treating Defendant's motion as one for summary judgment, the Court need not address the alternative grounds for judgment on the pleadings.

making placement and transfer decisions. *See Rodriguez*, 541 F.3d at 1186. As determined by the Ninth Circuit, inmates must be considered for RRC placement based on the five factors of section 3621(b) and consequently, the BOP cannot reference 28 C.F.R. §§ 570.20 and 570.21 in considering an inmate for RRC placement. *Id.* at 1189.

*Id.* at 2-3.

## B. Factual Background[4]

### 1. Plaintiff's Version

The following Plaintiff's version of the factual background is derived from the allegations in her second amended complaint. *See* Dkt. 48. Plaintiff claims that "[o]n or about October 4, 2011, [she] was sentenced to a forty-eight-month term of incarceration for the offense of security fraud." *Id.* at 3. On December 19, 2011, she arrived at FCI-Dublin to complete her sentence. *Id.* She claims that in August 2012, she was "classified by the [BOP] Central Monitoring Case . . . as 'community custody.'" *Id.* Plaintiff claims that, according to the Second Chance Act, she would have become eligible for up to twelve-month pre-release placement in an RRC. *Id.* Plaintiff claims that she believed her eligibility to serve her sentence in an RRC started on or about June 2013. *Id.* Thus, she requested to be transferred to an RRC on or about December 2012. *Id.* She claims that on December 3, 2012, her request "was denied within [Defendant's] authority." *Id.* at 3, 5; Dkt. 1, Ex. 4 (Defendant's May 30, 2013 Response to Request for Administrative Remedy).

### 2. Defendant's Version

The following is Defendant's version of the factual background is taken from the Defendant's dispositive motion. *See* Dkt. 60 at 11-15.

### A. Plaintiff Served A 48-Month Sentence At A Minimum-Security Prison

In June 2011, Plaintiff was convicted of conspiracy to commit

---

[4] This Order contains a few acronyms. Here, in one place, they are:

| | |
|---|---|
| BOP | Bureau of Prisons |
| FCI-Dublin | Federal Corrections Institute in Dublin, California |
| IFRP | Inmate Financial Responsibility Program |
| PS | Program Statement |
| RDAP | Residential Drug Abuse Treatment Program |
| RRC | Residential Re-entry Center |

securities fraud and wire fraud crimes. Dkt. 48 (Compl.) at 1. She served the majority of her 48-month prison sentence at the Satellite Prison Camp (SPC) at Dublin, which is a part of FCI-Dublin. *Id.* FCI-Dublin is a minimum security facility for female offenders with an adjacent minimum security satellite camp for female offenders. Declaration of Randy S. Tews ("Tews Decl.") ¶ 4. At the time of Plaintiff's incarceration, Defendant served as Warden over the approximately 1400 inmates at the SPC and FCI-Dublin. *Id.* ¶ 5.

**B. Plaintiff's Unit Team Made An RRC Determination Based On Five Statutorily-Required Factors And Other Permissible Considerations**

In December 2012, having been classified as an inmate in "community custody," Compl. at 3, ¶ 2, which is a lower security level, *id.*, Plaintiff requested a review of her eligibility for a twelve-month pre-release placement in a residential re-entry center ("RRC"), or halfway house, to assist her with positive reintegration into the community. *Id.* ¶ 3; *see also* Tews Decl. ¶ 11 (describing the RRC program). Per 18 U.S.C. § 3624(c), "The Director of the Bureau of Prisons *shall, to the extent practicable,* ensure that a prisoner serving a term of imprisonment *spends a portion* of the final months of that term (not to exceed 12 months), under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the reentry for that prisoner into the community." 18 U.S.C. § 3624(c) (emphasis added). In determining a particular inmate's placement, the inmate's Unit Team works closely with the inmate and is responsible for, among many other things, recommending the appropriate length of RRC placement for the inmate. Tews Decl. at ¶¶ 13-14, 20. In making this recommendation, the team must consider the five factors set forth in 18 U.S.C. § 3621(b). *See, e.g.*, Compl. at Ex. 1, at p. 11 (noting that the Unit Team considered the five statutory factors in Plaintiff's case). The factors are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence—(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

However, the Unit Team may consider other factors. *See, e.g.*, *Rodriguez v. Smith* 541 F.3d 1180, 1187 (9th Cir. 2009) (recognizing that the five factors are not exhaustive); *see also* Tews Decl. ¶¶ 24-26 and Attachments C-F (referencing BOP guidance regarding all of the factors that can be considered in making an RRC determination). Section 3624(c) specifically requires that the BOP make individualized assessments of the custody needs of each inmate under § 3621(b), providing: The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of prisons is—(A) conducted in a manner consistent with section 3621(b) of this title; *(B) determined on an individual basis*; and (C) of sufficient duration to provide the greatest

likelihood of successful reintegration into the community. 18 U.S.C. § 3624(c) (emphasis added).

Utilizing and applying the statutory requirements and BOP guidance, Plaintiff's Unit Team determined in July 2013 that a six-month RRC placement beginning on December 23, 2013 was appropriate. Compl. at Ex. 1 at 11. To reach the conclusion, the team applied the five required statutory factors. *Id.* (stating all five factors considered). The Unit Team also took into account Plaintiff's low-risk of recidivism based on her lack of criminal history; her family support and financial resources; the loss of her professional license; her general job skills; her planned residence with a friend upon release; her failure to complete the Residential Drug Abuse Treatment Program ("RDAP"); and Plaintiff's refusal to participate in the Inmate Financial Responsibility Program ("IFRP"). *See id.* Because the RRC assessment is, by statute, individualized, the Unit Team did not compare Plaintiff to other inmates; indeed, each inmate on the Unit Team's caseload was considered based solely on the application of the five statutory factors to her as well as any additional factors specific to her. Tews Decl. at ¶ 30.

The IFRP is a *voluntary* program intended to encourage inmates to meet their financial obligations. *See* 28 C.F.R. § 545.10; *see also* BOP Program Statement ("PS") 5380.08, Inmate Financial Responsibility Program (August 15, 2005)(available at http://www.bop.gov); *see also* Compl. at 14, ¶ 25 (stating that IFRP is a voluntary program). Financial obligations include fines, restitution, and outstanding judgments. 28 C.F.R. § 545.11(a)(1)-(5); PS 5380.08, pp. 4-7. When an inmate arrives at an institution, a Unit Team assesses the inmate's obligations and prepares a financial plan. *See* 28 C.F.R. § 545.10-11(b); PS 5380.08, at 7-9. Under the financial plan, the inmate then makes payments both from outside resources and funds acquired at the institution. *See* 28 C.F.R. § 545.11(b); PS 5380.08, at 7. The payments are determined with reference to, among other things, monthly pay from the inmate's work assignments. 28 C.F.R. § 545.11(b). As the IFRP is a voluntary program, inmates are free to decline to participate in IFRP, but the failure either to participate or to comply with a financial plan may result in limitations on furloughs, pay, work detail, commissary spending, housing status, and placement in community-based programs. *See id.* § 545.11(d). At SPC-Dublin, refusal to participate in the program or failure to comply with provisions of their financial plan results in withdrawal of privileges per the SPC-Dublin Handbook. Tews Decl. ¶ 34 and Attachment H, at pp. 13-14.

Defendant reviewed the RRC recommendation made by the Unit Team for Plaintiff, Tews Decl. ¶ 21 & Attachment A, and Plaintiff's May 15, 2013 progress report, *id.* ¶ 22 & Attachment B. Concurring with the team, Defendant found the assessment reasonable, if not generous in his experience, because the team had considered the five factors set forth in 18 U.S.C. § 3624(b) in making its recommendation for a six-month RRC placement and had properly considered other factors. *Id.* ¶ 27.

**B. Plaintiff Was Given A Common Work Assignment**

Plaintiff was assigned the job of "orderly" in July 2013. *See, e.g.*, Compl. at 8 (citing Ex. 6). All federal inmates are required to work with the exception of those who for security, education, or medical reasons are unable to do so. *See Inmate Work and Performance*, 28 C.F.R. pt 545, subpt. C; Program Statement 5251.06, *Inmate Work and Performance Pay*. Pursuant to 18 U.S.C. § 4125(a), federal inmates may be made available to perform public works financed wholly or in part by funds appropriated by Congress. It is common for inmates at SPC-Dublin to be assigned public works projects at the United States Army's Parks Reserve Forces Training Area, which is adjacent to FCI-Dublin, as Plaintiff was. Tews Decl. at ¶¶ 43, 44. Compl. at ¶ 16. Work assignments can be affected by the failure to participate in the IFRP. Tews Decl. ¶ 34 and Attachment H (SCP-Dublin handbook) at pp. 13-14. Defendant played no role in inmate work assignments. Tews Decl. ¶ 45.

**D. Plaintiff's Medical Condition Did Not Warrant A Change In Work Assignment**

FCI-Dublin offers health services to inmates and Plaintiff utilized those services. *See, e.g.*, Compl. at Ex. 2 (health records). The operation of the Health Services Department at FCI-Dublin was directly supervised by the Health Services Administrator. Medical care was supervised by the Clinical Director, who was also a health care provider. These staff members reported to the Associate Warden for Operations, who in turn reported to Defendant. Tews Decl. ¶ 47. Defendant had no direct involvement with Plaintiff's medical care and was not aware of Plaintiff's health condition until he received a request for administrative remedy from Plaintiff dated August 20, 2013. *Id.* ¶¶ 41, 48. Indeed, Defendant had no access to Plaintiff's, or any other inmates, medical records, which are contained in an electronic records systems to which he had no access. *Id.*

On August 21, 2012, Plaintiff's BOP medical records show that she experienced chest pain, and was referred by a Camp Officer to Health Services where it was recorded that her heart was beating quickly and she reported that she was experiencing "crushing" pain. Compl. at Ex. 2 at 2; Ex. 3 at Compl. at p. 19. Records indicate that on July 19, 2013, the institution's Utilization Review Committee met to discuss and ultimately approved a cardiology consultation that had been requested by Plaintiff. *Id.* at Ex. 3. On July 12, 2013, Plaintiff told her work supervisor that she could not perform her work duties because of her heart condition. Tews Decl. Attachment I at 1. She later received an incident report for and was later found guilty of a "Code 311" disciplinary violation for failing to perform work and making a false statement to her supervisor. *Id.* Her punishment was loss of phone privileges for 15 days. *Id.* at 3. In Defendant's response to Plaintiff's August 20, 2013 request for administrative remedy following the incident, Defendant stated that based on his review, Plaintiff's discipline was warranted because there was no indication from the Health Services clinician that "[Plaintiff] could not or should not report to your work detail at the Army, Camps Park." Tews Decl., Attachment I at 1. According to Defendant's response, when Plaintiff told her work supervisor of her heart condition, Plaintiff "caused

enough alarm" that her supervisor "did not feel comfortable having you on the detail at that time." *Id.* However, since Health Services had not given Plaintiff any medical restrictions, ". . . it was determined you failed to perform your work when you took it upon yourself to give alarming information in regard to the condition of your heart." *Id.*

*Id.*

### C. Procedural Background

The record shows that Plaintiff had previously filed and fully litigated a habeas petition that, like the instant complaint, pertained to the alleged unlawful denial of her request to transfer to an RRC with twelve months remaining on her prison sentence. *See* Dkt. 38 at 1. She has also utilized the BOP's Administrative Remedy Program, which is available to all inmates, to challenge her RRC determination. *See* 28 C.F.R. §§ 542.10-542.19; *see, e.g.*, Dkt. 1-1 at 29; Dkt. 1, Ex. 4 (Defendant's May 30, 2013 Response to Request for Administrative Remedy).

Specifically, as mentioned above, this action originally was filed by as a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Plaintiff sought an Order directing the BOP to transfer her immediately to an RRC and requiring the BOP to consider the relevant statutory factors to determine the appropriateness of such a transfer. *See* Dkt. 1 at 1-2, 6. The Court noted that since this action was initially filed, Plaintiff obtained the relief she requested: transfer to an RRC. *See* Dkt. 19 at 2 (citing Dkt. 9). The Court further noted that Plaintiff had since been released from BOP custody. *Id.*

In an Order dated August 28, 2014, the Court granted Respondent's motion to dismiss the petition as moot. Because Plaintiff's release from BOP custody was a result more favorable than the relief sought in the petition, the Court found that there was no longer a live controversy before it. Dkt. 23 at 2 (citing *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996)). Also in its August 28, 2014 Order, the Court denied Plaintiff's motion to convert her petition to a *Bivens* action upon determining that she filed the instant action prior to exhausting administrative remedies. *Id.* (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Thereafter, this case was reopened when the Ninth Circuit reversed this Court's ruling denying Plaintiff's motion to convert her petition to a *Bivens* action. *See* Dkt. 27. Because the record was not developed fully, the Ninth Circuit stated that it could not determine "whether the district court properly denied the motion to convert based

on [Plaintiff's] failure to exhaust." *Id.* at 2-3. The Ninth Circuit thus vacated "the portion of the judgment denying [Plaintiff's] motion to convert and remand[ed] for further proceedings, including, if necessary, further development of the record as to whether the government sought an extension [to file a response to the grievance] and whether [Plaintiff] received notice of an extension." *Id.* at 3. The Ninth Circuit issued its mandate. Dkt. 31. The Court then directed Respondent to provide the aforementioned further briefing and also to file a renewed motion to deny Plaintiff's motion to convert her petition to a *Bivens* action "if Respondent believe[d] that it is clear from the record that Plaintiff filed the instant action prior to exhausting administrative remedies." *See* Dkt. 35. Respondent filed a response indicating he no longer opposed Plaintiff's request on the ground that she failed to exhaust her administrative remedies but opposed the request on other grounds. Dkt. 36. Plaintiff filed an opposition to Respondent's response. Dkt. 37. Plaintiff also moved for leave to proceed *in forma pauperis* ("IFP"), which the Court construed to be her notice of intent to prosecute this action as a *Bivens* action with the higher filing fee of $400.00. Dkt. 33.

In an Order dated August 15, 2017, the Court granted Plaintiff's request to convert her petition into a *Bivens* action and granted her an opportunity to amend her claims relating to the following: Due Process, Equal Protection, and Ex Post Facto Clauses.[5] Dkt. 38. On the same date, the Court also granted her motion for leave to proceed IFP in a separate written Order. Dkt. 39.

On January 19, 2018, the Court issued its Order Granting Plaintiff's Motion for Leave to File Second Amended Complaint, and it noted that Plaintiff shall refer to the Court's August 15, 2017 Order "which indicate[d] that 'although she has been given the opportunity to amend, it is not for the purposes of adding new claims.'" Dkt. 46 at 2 (citing Dkt. 38 at 14). Plaintiff was specifically instructed that if she "wishe[d] to raise new claims, she may do so in *a separate new*

---

[5] Plaintiff had also raised an Eighth Amendment claim based on the denial of her RRC transfer request and a First Amendment claim that such a denial was the result of retaliation by Defendant due to her previous lawsuits. Dkt. 48 at 16-19. However, the Court dismissed both claims with prejudice in its August 15, 2017 Order. *See* Dkt. 38 at 8-9, 13-14. The Court also specified that it granted Plaintiff "an opportunity to amend [her] claims relating to the following: Due Process, Equal Protection, and Ex Post Facto Clauses." *Id.* at 14.

*Bivens action.*" *Id.* (emphasis in original).

On February 2, 2018, Plaintiff filed her second amended complaint against Defendant, which is the operative complaint in this action. Dkt. 48.

On July 10, 2018, this Court issued an Order of Service finding three of Plaintiff's claims cognizable and determined that they could proceed against Defendant. Dkt. 50. Specifically, the Court found that when it liberally construed the claims in her second amended complaint, Plaintiff alleged a violation of Due Process, Equal Protection, and Ex Post Facto Clauses. *Id.* at 3-4. Again, central to all three claims is the denial of her request to be transferred to an RRC for the remaining twelve months of her term of incarceration. In particular, the Court first found cognizable Plaintiff's allegations that Defendant violated the Due Process Clause by depriving her of a liberty interest created by 18 U.S.C. §§ 3621(b) and 3624(c), the statutory provisions governing the BOP's housing determinations, by "fail[ing] to conduct [her] pre-release review by utilizing [the] five-factor analysis mandated by 18 U.S.C. § 3621(b) properly," and that the BOP should have exercised its authority under 18 U.S.C. § 3624(c) to authorize a transfer to an RRC. *Id.* at 4-6. The Court further found cognizable Plaintiff's allegation that Defendant violated the Ex Post Facto Clause by "continuing to deduct restitution payments" under the voluntary IFRP while allegedly compelling her to participate in the program by using it as a reason to deny her request to be transferred to the RRC. *Id.* at 6. Finally, the Court found cognizable Plaintiff's third claim is an alleged violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution under a "class of one" theory for Defendant's allegedly invidiously dissimilar treatment of Plaintiff as compared to other allegedly similarly situated women who also sought transfers to RRCs without a rational basis. *See id.* at 6-8; *see also id.* at 1, 4-8.

On September 10, 2018, Defendant filed an answer to the second amended complaint. Dkt. 55.

On December 12, 2018, Defendant filed the instant motion for judgment on the pleadings, or in the alternative, summary judgment. Dkt. 60. Again, as mentioned above, because the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(b). On January 17, 2019, Plaintiff filed her opposition. Dkt. 62. On

January 31, 2019, Defendant filed a reply.  Dkt. 63.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P. 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record").  The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323.

A district court may consider only admissible evidence in ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of the motion for summary judgment, Defendant has submitted his own declaration and attached exhibits relating to the decision involving Plaintiff's RRC placement request and her subsequent request for administrative remedy.  Dkts. 60-2, 60-3, 60-4, 60-5, 60-6, 60-7, 60-8, 60-9, 60-10, 60-11.  Because the aforementioned documents have been properly authenticated pursuant to Federal Rule of Evidence 803(6), the Court will consider these documents in connection with Defendant's motion for summary judgment.

Plaintiff has verified her second amended complaint[6] and declaration in support of her opposition[7] by signing them under penalty of perjury. Dkt. 48 at 20; Dkt. 62-1 at 9. However, Plaintiff has not verified her opposition because she failed to sign either under penalty of perjury. *See* Dkt. 62 at 10. The Court may treat the allegations in the verified second amended complaint and declaration as opposing affidavits to the extent such allegations are based on Plaintiff's personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating a plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, he stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

**B.    Analysis of Merits**

**1.    Due Process Claim**

In her second amended complaint, Plaintiff asserts that Defendant violated the Due Process Clause by refusing her RRC transfer request. Dkt. 48 at 12-13

The Due Process Clause protects against the deprivation of liberty without due process of law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Id.* Liberty interests may arise from the Due Process Clause itself, or from an expectation or interest created by prison regulations. *Id.* The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." *Id.* The existence of a liberty interest created by prison regulations is determined by focusing on the

---

[6] Attached to Plaintiff's second amended complaint are exhibits relating to the decision involving her RRC placement request that are mostly similar to those attached to Defendant's declaration. *See* Dkt. 48-1 at 21-36; Dkts. 60-3, 60-4, 60-5, 60-6, 60-7, 60-8, 60-9, 60-10, 60-11. As these documents are evidence already considered in connection with the summary judgment motion, the Court will also consider the same documents submitted by Plaintiff. Plaintiff has also submitted various progress reports and health services clinical encounter administrative notes, to which Defendants do not object. Dkt. 48-1 at 2-19.

[7] In her declaration, Plaintiff references her First and Eighth Amendment claims. *See* Pl. Decl. ¶¶ 10, 17. However, as mentioned above, in this Court's August 15, 2017 Order, it dismissed both claims with prejudice. *See* Dkt. 38 at 8-9, 13-14. Therefore, the Court need not address any arguments as to her previously dismissed First and Eighth Amendment claims.

United States District Court
Northern District of California

nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995). Such liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484; *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). The Fifth Amendment itself provides no liberty interest in a prisoner's desired location of incarceration. As mentioned above, the law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility, even though the degree of confinement in one facility may be quite different from that in another. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that discretionary determinations regarding conditions of confinement do not create due process rights).

In its July 10, 2018 Order of Service, the Court determined that, in her second amended complaint, Plaintiff identified the sources of her liberty interest: 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Dkt. 50 at 5 (citing Dkt. 48 at 12-13). Specifically, Plaintiff alleged that Defendant denied her right to due process by "fail[ing] to conduct [her] pre-release review by utilizing [the] five-factor analysis mandated by 18 U.S.C. § 3621(b) properly," dkt. 48 at 12, and that the BOP should have exercised its authority granted in 18 U.S.C. § 3624(c) to authorize her transfer to an RRC, *id*. at 3-4, 12-13. Plaintiff further alleged that Defendant relied on "false information" and classified her as having a "low chance of recidivism" in order to exclude her from being granted the 12-month RRC placement. *Id*. at 5. She alleged that, to the contrary, she has a *high* chance of recidivism given her lack of family support, financial resources, general job skills, and other factors. *Id*. Thus, she claimed that Defendant "supervised others conducting [the] RRC determination by [creating] false information and [a falsified] recidivism risk level to exclude her from getting [the] 12-month RRC placement." *Id.* Plaintiff further claimed that other similarly situated inmates or inmates in better financial and health conditions were allowed placement in the RRC. *Id.* Plaintiff alleged that she suffered from a "worsening cardiac problem and serious depression" as her heart failed on August 21, 2012, at which time she was rushed to the emergency room. *Id.* She claimed that her "poor health condition limited her employment opportunities," and she "requested more time and medical assistance to stabilize her condition for

a 12-month RRC [placement]." *Id.* at 6. She added that she "submitted her extraordinary reentry needs to Defendant and his office in multiple written requests between December 2012 and April 2013." *Id.* Finally, Plaintiff alleges that Defendant also assigned her a "hard labor" position in a "janitorial [position] in [a] U.S. Army base" in August 2013 despite her medical condition, and after the army supervisor dismissed her due to her heart condition she was "punished" with two disciplinary charges. *Id*. at 11.

The Court finds that Plaintiff's claim fails as a matter of law under the *Sandin* analysis because the statutory provisions Plaintiff cites as the basis for her liberty interest—18 U.S.C. §§ 3621(b) and 3624(c)—do not create a restraint on her freedom that imposes an atypical or significant hardship on prison life because the aforementioned provisions' purpose is to afford prisoners an opportunity to reintegrate into life outside of prison. As explained above, the BOP has the authority, under 18 U.S.C. § 3621(b), to designate the location of an inmate's imprisonment. *Rodriguez*, 541 F.3d at 1182. Inmates must be considered for RRC placement based on the five factors set forth in section 3621(b), and the BOP may not reference 28 C.F.R. §§ 570.20 and 570.21 in considering an inmate for RRC placement. *Id.* at 1189. Under 18 U.S.C. § 3624(c), the BOP has an affirmative duty to consider placing the inmate in a community RRC or similar pre-release alternative towards the end of the inmate's prison term. *Id.* at 1184. However, the BOP has the discretion to transfer inmates to an RRC at any time. *Id.* at 1182, 1185-89 (holding that BOP regulations categorically excluding RRC placement of inmates with more than ten percent of their sentences remaining violates Congressional intent that BOP must consider several factors to determine placement under section 3621(b)). Specifically, section 3624(c) provides discretionary language regarding custody conditions, and states that the Director of BOP "shall, to the extent practicable," place a prisoner in "conditions that will help adjust and prepare for reentry into the community," which "may include a community correctional facility" for a "portion" of a prisoner's final months of a prison term. 18 U.S.C. § 3624(c). Again, the Court finds that this provision does not impose "atypical or significant hardship" on a prisoner because its purpose is to afford prisoners an opportunity to reintegrate into life outside of prison, which is not a hardship.

13

As to Plaintiff's claim that she did not receive "proper" five factor consideration of the statutory criteria set forth in section 3621(b), Defendant argues that such a contention "does not appear to be relevant in the context of her due process claim." Dkt. 60 at 17 fn. 2. The Court agrees. Plaintiff was evaluated for classification and designation by the BOP in July 2013. Dkt. In finding appropriate and assigning Plaintiff to a six-month (as opposed to a twelve-month) RRC placement beginning December 23, 2013, BOP considered the five required statutory factors as well as the other information required by BOP's classification, designation and re-designation procedures, which are consistent with the statutory authority contained in section 3621(b). Further, federal courts lack jurisdiction to review "any determination, decision, or order" made pursuant to 18 U.S.C. §§ 3621, 3624. *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("The plain language of [18 U.S.C. § 3625] specifies that the judicial review provisions of the [Administrative Procedure Act], 5 U.S.C. §§ 701-706, do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621-3624."). Thus, in essence, the statute does not confer on Plaintiff a right to what she believes to be "proper" consideration of those five factors.

Additionally, Defendant argues that to the extent Plaintiff is claiming that the Unit Team's application of sections 3621(b) and 3624(c) in her case, which limited Plaintiff's RRC placement to six months (instead of twelve) constituted "atypical or significant hardship," she "misapprehends the law." Dkt. 60 at 25. Thus:

> The Unit Team's decision to keep Plaintiff in the same, minimum-security prison environment with ample services during a portion of her last year in confinement was not a departure from the ordinary course of Plaintiff's prison life and thus was neither atypical nor significant hardship. That Plaintiff was assigned to serve as an "orderly" does not alter this conclusion. Indeed, per 28 C.F.R. subpt. 545, subpt. C; Program Statement 5251.06, Inmate Work and Performance Pay, all federal inmates are required to work excepting certain reasons, and typical jobs include orderly. Tews Decl. at ¶ 38. Thus, there was nothing atypical about the assignment. As to plaintiff's claim that this was "hard labor" due to her health condition, Compl. at 12, 13, 17, 18, the record contains no evidence that the prison's Health Services' clinicians believed that any of her health conditions required any limitations on her work assignments, thus there was no significant hardship.

*Id.* Again, the Court agrees with Defendant. Plaintiff has not presented, nor has the Court found,

14

any caselaw that stands for the proposition that limiting RRC placement would amount to an atypical hardship. As Defendant argues above, Plaintiff was essentially kept in "the same, minimum-security prison environment with ample services during a portion of her last year in confinement," which does not amount to an atypical or significant hardship as a matter of law. The Court also agrees that there was nothing atypical about Plaintiff's work assignment as an "orderly." To the extent that Plaintiff's claims that her assignment was "hard labor" due to her health condition, the Court finds that nothing in the record exists showing that Plaintiff required any limitations on her work assignments which could have amounted to significant hardship.

Finally, in its July 10, 2018 Order, the Court has already determined that to the extent Plaintiff's due process claim is a claim that she had a protected liberty interest in an RRC placement, such a claim would be barred for lack of subject matter jurisdiction. Dkt. 50 at 4 (citing *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983) (the law is clear that a prisoner has no constitutional right to be placed in any particular correctional facility, even though the degree of confinement in one facility may be quite different from that in another); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (same); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that discretionary determinations regarding conditions of confinement do not create due process rights). And as mentioned above, the Ninth Circuit has held that district courts do not have subject matter jurisdiction over individualized determinations regarding RRC placements. *See Brown v. Ives*, No. No. 11-56885, 2013 WL 5718528, at **1 (9th Cir. 2013) (citing *Reeb*, 636 F.3d at 1227-28) (affirming dismissal of petition challenging the BOP's individualized determination concerning petitioner's placement in an RRC for lack of jurisdiction).

Accordingly, because Plaintiff cannot establish a federal due process claim, Defendant is entitled to judgment as a matter of law as to this claim.

### 2. Ex Post Facto Claim

In her second amended complaint, Plaintiff alleges Defendant violated her rights under the Ex Post Facto Clause by continuing to deduct restitution payments from her prison salary through the IFRP and forcing her to participate in such a program by using any refusal to do so as a reason to deny her request to be transferred to an RRC. Dkt. 48 at 7-8, 14-15.

The United States Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10. The Ex Post Facto Clauses are designed to prevent manifestly unjust and oppressive retroactive effects. Specifically, these clauses prohibit the government from enacting laws with certain retroactive effects: any law that (1) makes an act done before the passing of the law, which was innocent when done, criminal; (2) aggravates a crime or makes it greater than it was when it was committed; (3) changes the punishment and inflicts a greater punishment for the crime than the punishment authorized by law when the crime was committed; or (4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed. *See Stogner v. California*, 539 U.S. 607, 611-12 (2003) (citing *Calder v. Bull*, 3 Dall. 386 (1798)). The first three prohibitions of the Ex Post Facto Clause apply only to "punishment," whether punishment for an act not punishable at the time it was committed, or "additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-26 (1866)).

A law violates the ex post facto clause if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. *See Cal. Dep't. of Corr. v. Morales*, 514 U.S. 499, 504 (1995); *Collins v. Youngblood*, 497 U.S. 37, 42 (1990).

Defendant argues that Plaintiff has not and cannot show either element, stating as follows:

> As an initial matter, the IFRP is a voluntary program intended to encourage sentenced inmates to meet legitimate financial obligations, which include finds, restitution, and other obligations such as child support or outstanding judgments. 28 C.F.R. § 545.10, 545.11(a)(l-5). Thus, the IFRP is not a law that punishes a criminal act. *Collins*, 497 U.S. at 41. Further, even if the IFRP were a penal statute, there is no retroactive element to Plaintiff's claim. In fact, Plaintiff is alleging a practice of continual deductions as opposed to retroactive deductions. Finally, the IFRP is actually meant to help, not penalize, prisoners.

Dkt. 60 at 26-27. The Court agrees with Defendant in that Plaintiff cannot show an ex post facto violation because the IFRP is not a penal statute. *See Morales*, 514 U.S. at 505 (ex post facto

clause pertains exclusively to penal statutes). In addition, the Court agrees that there is no retroactive element to Plaintiff's claim. Thus, it seems that Plaintiff has failed to allege an ex post facto violation.

However, the Court notes that Plaintiff seems to allege an ex post facto violation based on Defendant's use of her refusal to participate in the IFRP as a reason to deny her request for transfer to an RRC. Defendant also claims that such an argument is "without grounds." Dkt. 60 at 27. Defendant points out that "the Ninth Circuit made clear in *Lemione*, consequences from non-participation in IFRP do not infringe on any constitutionally-protected liberty interest." *Id.* (citing *United States v. Lemoine*, 546 F.3d 1049 (9th Cir. 2008); Tews Decl. ¶ 34; 28 C.F.R. § 535.11(d) (stating that while an inmate is free to decline to participate in a financial responsibility program, as it is a voluntary program, that refusal "shall" ordinarily result in a number of consequences in terms of housing and work, among other things)).

The Ex Post Facto Clause is not violated by legislation that "impose[s] new requirements on convicted persons if the statute's 'overall design and effect' indicates a 'non-punitive intent.'" *Rise v. Oregon*, 59 F.3d 1556, 1562 (9th Cir. 1995), *overruled on other grounds by City of Indianapolis v. Edmon*d, 531 U.S. 32 (2000) (statute requiring blood samples from sex offenders could be applied to those convicted before its enactment because the purpose of the blood sampling was to create a data bank to assist in the identification, arrest and prosecution of criminals, not to punish the convicted ones). Changes in the conditions of inmates' confinement and denials of privileges are among those matters which every prisoner can anticipate are contemplated by his original sentence to prison.

> It is precisely because reasonable prison regulations, and subsequent punishment for infractions thereof, are contemplated as part of the sentence of every prisoner, that they do not constitute additional punishment and are not classified as ex post facto. Moreover, since a prisoner's original sentence does not embrace a right to one set of regulations over another, reasonable amendments, too, fall within the anticipated sentence of every inmate.

*Jones v. Murray*, 962 F.2d 302, 309-10 (4th Cir. 1992).

Here, the IFRP, which is a regulation that encourages inmates voluntarily to make more generous restitution payments than mandated in their respective judgments, does not violate the

Ex Post Facto Clause because it does not constitute punishment of the inmates. Therefore, the Court finds that Plaintiff's ex post facto claim fails.

Accordingly, Defendant is entitled to summary judgment on this claim.

### 3. Equal Protection Claim

In her second amended complaint, Plaintiff claims that she was "treated differently from other inmates with similar education and employment experience, without [any] prior conviction, but that the different treatment was not rationally related to a legitimate government interest." Dkt. 48 at 15. Specifically, Plaintiff alleges that she was convicted of securities fraud, *id.* at 3, and that she lost her professional license, *id.* at 5, which indicate that she most likely worked in the financial industry and had a post-graduate degree. Plaintiff alleges that the "other similarly situated inmates, and inmates with homes to go to or with financial support[] from their families were given more than 6-month RRC time." *Id.* at 6. For example, Plaintiff states an inmate named Nicole Song was also a single woman who worked in the financial industry with a post-graduate degree, and Ms. Song received more than a six-month placement in an RRC. *Id.* Plaintiff further claims that another inmate named Yvonne Rowland, who worked in the financial industry with a post-graduate degree, was placed in RRC for more than six months as well. *Id.* Finally, Plaintiff claims that another inmate named Amy Schloemann worked in the financial industry with a post-graduate degree and received an RRC placement of more than six month. *Id.*

In its July 10, 2018 Screening Order, the Court determined that Plaintiff was "not alleging a violation of equal protection based on race or another suspect classification," and instead alleging a "class of one" claim. Dkt. 50 at 7.

Where state action, or in this case *federal* action, does not implicate a fundamental right or a suspect classification, Plaintiff can establish an equal protection "class of one" claim by alleging facts from which it can be inferred that the state or *federal* actor intentionally treated her differently than other similarly situated persons without a rational basis. *Cf. Gerhart v. Lake County Montana*, 637 F.3d 1013, 1020 (9th Cir. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). The intent element does not require that the government actors acted with "subjective ill will" towards the plaintiff, merely that they intended to treat the

plaintiff differently. *Gerhart*, 637 F.3d at 1022 (citing *Willowbrook*, 528 U.S. at 565). Similarly, the rational basis must exist, not for the government's underlying action, but for treating the plaintiff differently. *Id.* at 1023 (rational basis for denial of permit not relevant; there must also be rational basis for denying permit to plaintiff but not to other similarly situated property owners).

The plaintiff may pursue a "class of one" claim by raising a triable issue of fact as to whether the defendants' asserted rational basis was merely a pretext for differential treatment. *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 945-46 (9th Cir. 2004), *overruled on other grounds*, *Action Apt. Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir.2007). Some governmental actions are by their nature discretionary, however, involving a "vast array of subjective, individualized assessments." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008). In such cases it is not a violation of equal protection when one person is treated differently from other, because doing so is an accepted consequence of the discretion granted. *Id.*

Defendant argues that Plaintiff's equal protection claim fails, stating as follows:

> Here, Plaintiff cannot allege a cognizable "class of one" equal protection claim because the RRC determination made by the BOP is, by statute, an individualized assessment of an inmate based on a number of subjective criteria. *See* 18 U.S.C § 3624(c) (requiring individualized determinations of each inmate)[FN 6]; *see* 18 U.S.C. § 3621(b) (stating the five statutorily-required criteria). Indeed, the length of Plaintiff's RRC placement recommendation was based on consideration of statutorily-required factors and other factors by the Plaintiff's Unit Team, and these factors were placed in the context of Plaintiff's own circumstances, without regard for any other inmate's circumstances. *See* Compl. at Ex. 1 p. 11 (showing the notes from the Unit Team's assessment about Plaintiff); *see also* Compl. at Ex. 4 (Defendant's response to Plaintiff's request for administrative remedy, noting the "Unit Team's individualized determination regarding [Plaintiff's] RRC placement]. Likewise, Defendant's review of Plaintiff's Unit Team's RRC determination for Plaintiff had nothing to do with a comparison between her and other inmates. *See id.* at ¶¶ 11-30. Defendant states that because the determination was individualized, the Unit Team did not, at any time, "line up the paperwork for a number of inmates and make each of their RRC placement decisions in comparison to the others' RRC placement decisions." *Id.* at 30. Notably, this Court does not have the power to review the outcome of an individualized assessment made by the BOP. *See Ives*, 543 Fed. Appx. at 637 ("Insofar as [Petitioner] is challenging the BOP's individualized determination concerning his placement, the district court properly concluded that it lacked jurisdiction over the petition").

[FN 6]: 18 U.S.C. § 3624(c) specifically requires that the BOP make individualized assessments under § 3621(b), providing:

(6) Issuance of regulations. -- The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of prisons is --

(A) conducted in a manner consistent with section 3621(b) of this title;
(B) *determined on an individual basis*; and
(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

Dkt. 60 at 28-29 (emphasis in original). Thus, Defendant argues the Court should enter judgment in their favor on Plaintiff's equal protection claim because the Unit Team's RRC determinations fall outside of a viable class-of-one claim. *See id.*

The Court agrees with Defendant. Plaintiff's allegedly disparate treatment (based on the Unit Team's RRC determination) was the result of discretionary decision-making, and the Ninth Circuit has held that the "class of one" theory is not cognizable with regard to discretionary actions. *See Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (citing *Engquist*, 553 U.S. at 603). In *Towery*, two inmates with impending execution dates moved for a preliminary injunction against the Arizona Department of Corrections' use of its current lethal-injection protocol on the ground that, among other things, the plaintiffs are each "a 'class of one,' and that the protocol allows the [Arizona Department of Corrections] Director to treat [them] differently from others similarly situated with no rational basis for doing so." *Towery*, 672 F.3d at 660-61. The district court denied the preliminary injunction. *Id.* The Ninth Circuit affirmed as follows:

The class-of-one doctrine does not apply to forms of state action that "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603, 128 S. Ct. 2146, 170 L.Ed.2d 975 (2008). "In such cases," the Court noted,

the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

> *Id.*
>
> Here, decisions on matters such as which drug protocol to use, which people to select for the execution team, and whether to use a central femoral IV are, under Arizona's statutory scheme, relegated to the Director, with no State law requirement that there be uniformity. Ariz. Rev. Stat. § 13–757(A). Absent any pattern of generally exercising the discretion in a particular manner while treating one individual differently and detrimentally, there is no basis for Equal Protection scrutiny under the class-of-one theory.

*Towery*, 672 F.3d at 660-61.

In the instant matter, the record reflects that Plaintiff's six-month RRC placement recommendation was based on consideration of statutorily-required factors, and Defendant's review of Plaintiff's Unit Team's RRC determination for Plaintiff had nothing to do with a comparison between her and other inmates. *See* Dkt. 1, Ex. 4; Tews Decl. ¶¶ 11-30. Accordingly, the Court concludes, pursuant to *Engquist* and *Towery*, Plaintiff does not have a cognizable "class of one" equal protection claim against Defendant under these circumstances. Therefore, Defendant is entitled to summary judgment on this claim.

### C. Qualified Immunity

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding

21

1  which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555

2  U.S. at 236.

3      Defendant argues that he is entitled to qualified immunity because Plaintiff cannot

4  establish violation of any constitutional rights. As discussed above, there is no evidence that

5  Defendant violated Plaintiff's constitutional rights. However, assuming arguendo that there was a

6  constitutional violation, Defendant would be entitled to qualified immunity against liability from

7  civil damages because Plaintiff has not shown that Defendant's conduct was unlawful from the

8  perspective of a reasonable prison official in Defendant's situation. Specifically, it would not have

9  been clear to a reasonable prison official placed in Defendant's position that his review and

10  agreement with Plaintiff's Unit Team's RRC determination of a six-month placement for Plaintiff

11  would be considered unlawful. *See Saucier*, 533 U.S. at 201-02.

12      Accordingly, Defendant is entitled to qualified immunity.

13  **IV.  CONCLUSION**

14      For the foregoing reasons, the Court GRANTS Defendant's motion for summary

15  judgment.[8] Dkt. 60. The Clerk of Court shall terminate all pending motions and close the file.

16      This Order terminates Docket No. 60.

17      IT IS SO ORDERED.

18  Dated: March 28, 2019

19                                    _____
20                                    YVONNE GONZALEZ ROGERS
                                      United States District Judge

---

[8] The Court's finding that Defendant is entitled to summary judgment as a matter of law on Plaintiff's claims obviates the need to address Defendant's alternative arguments in support of his motion for summary judgment or his motion for judgment on the pleadings.