UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WINIFRED JIAU,

    Plaintiff,

v.

RANDY L. TEWS,

    Defendant.

Case No. 13-cv-04231-YGR (PR)

**ORDER REVIEWING THIRD AMENDED COMPLAINT; AND DENYING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE TO FILING A MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This action originally was filed by Winifred Jiau, a former federal prisoner, as a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Plaintiff, who at the time she filed the instant action was an inmate in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Corrections Institute in Dublin, California ("FCI-Dublin"), alleged that she was unlawfully denied her request for transfer to a Residential Re-entry Center ("RRC")[1] on December 3, 2012. The Court notes that Plaintiff was eventually placed in an RRC around a year later, on December 23, 2013. Dkt. 48 at 10. She has since been released from BOP custody, as of June 2014. *Id.* at 1.

In an Order dated August 15, 2017, the instant action was converted into a *pro se* action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Dkt. 38. Plaintiff's has been granted leave to proceed *in forma pauperis.* Dkt. 39. The Court found that Plaintiff's allegations did not state a claim for relief. Dkt. 38 at 7-14. However, the Court granted Plaintiff an opportunity to amend her claims relating to the following: Due Process, Equal Protection, and Ex Post Facto Clauses. *Id.* at 14. Meanwhile, Plaintiff had also raised an Eighth Amendment claim based on the denial of her RRC transfer request and a First Amendment claim that such a denial was the result of retaliation due to her previous lawsuits, but the Court dismissed both claims with prejudice and without leave to amend in its August 15, 2017 Order. *Id.* at 8-9, 13-14.

---

[1] Some RRCs are colloquially known as halfway houses.

Plaintiff then filed her second amended complaint ("SAC") in which she named Defendant Randy L. Tews (hereinafter "Defendant"), who is the warden at FCI-Dublin. Dkt. 48 at 2.[2] Plaintiff sought monetary damages. *Id*. at 20. On July 10, 2018, the Court issued its service order and served the SAC on Defendant. Dkt. 50.

In an Order dated March 28, 2019, the Court granted Defendant's dispositive motion on the claims in the SAC relating to the Due Process, Equal Protection, and Ex Post Facto Clauses, which was treated as one for summary judgment. Dkt. 65. Plaintiff appealed. Dkt. 67.

On appeal, the Ninth Circuit, in an opinion filed July 20, 2020, affirmed the Court's ruling on the claims relating to the Due Process, Equal Protection, and Ex Post Facto Clauses as well as on the dismissal of the deliberate indifference and retaliation claims, but reversed and remanded as to the denial of leave to amend the deliberate indifference claim. *See* Dkt. 69, *Jiau v. Tews*, No. 19-15825, slip op. at 4 (9th Cir. July 20, 2020). Specifically, the Ninth Circuit found "the district court abused its discretion by denying [Plaintiff] leave to amend her deliberate indifference claim because it is not absolutely clear that the claim cannot be cured by amendment." *Id.* (citing *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.")). The mandate issued on September 11, 2020. Dkt. 70.

In an Order dated October 6, 2020, the Court reopened this action and granted Plaintiff leave to amend the Eighth Amendment deliberate indifference claim in a third amended complaint ("TAC"). Dkt. 71 at 3. The Court explained to Plaintiff that her amended deliberate indifference claim could not rest on her previous allegations that she did not obtain the RRC transfer she sought. *Id.* The Court also provided background and analysis from its August 15, 2017 Order, in which it explained the requirements for a cognizable violation of the Eighth Amendment claim.

---

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

2

*Id.* It further set forth its earlier finding, stating as follows:

> Plaintiff does not allege that she was denied the minimal, civilized measure of life's necessities. Nor does she provide evidence of deprivations of any of the aforementioned categories. Rather, she complains of being denied a particular prison transfer. Plaintiff cannot state an Eighth Amendment claim on these grounds, because the deprivation complained of is not sufficiently extreme.

*Id.* Finally, the Court cautioned Plaintiff that a failure to file a TAC that corrects the previously-found deficiency would result in a dismissal without prejudice. *Id.* at 4.

Thereafter, Plaintiff filed her TAC. Dkt. 72.

Defendant has filed a motion to dismiss the TAC on the following grounds: (1) a Federal Rule of Civil Procedure ("FRCP") 12(b)(1) dismissal because the Court lacks subject matter jurisdiction over Plaintiff's claim; and (2) a FRCP 12(b)(6) dismissal because Plaintiff fails to state a plausible claim of relief under *Bivens* and the Eighth Amendment; and (3) qualified immunity. Dkt. 73. Plaintiff has opposed the motion to dismiss, and Defendant has filed a reply. Dkts. 77, 78. Plaintiff has also filed an unsolicited sur-reply. Dkt. 79. In addition, Plaintiff has filed a "Motion to Strike Defendant's Motion to Dismiss as Untimely." Dkt. 74. Defendant has opposed the motion to strike, and Plaintiff has filed a reply. Dkts. 75, 76.

For the reasons outlined below, the Court reviews the TAC and finds cognizable Plaintiff's amended Eighth Amendment claim, and it DENIES Defendants' motion to dismiss without prejudice to filing a motion for summary judgment, as well as DENIES as moot Plaintiff's motion to strike.

## II. BACKGROUND

Because this action involves the alleged denial of Plaintiff's request to be transferred to an RRC, the Court includes this brief background from on the authority of the BOP to place an inmate in an RRC from its July 10, 2018 Order, which states as follows:

> The BOP has the authority, under 18 U.S.C. § 3[62]1(b), to designate the location of an inmate's imprisonment. 18 U.S.C. § 3[62]1(b). Prior to December 13, 2002, the BOP's policy was to exercise its discretion in allowing prisoners to serve part or all of their imprisonment in an RRC. *Rodriguez v. Smith*, 541 F.3d 1180, 1182

3

> (9th Cir. 2008). As of December 13, 2002, the Department of Justice Office of Legal Counsel ended that practice by issuing a legal opinion that section 3621(b) does not authorize inmate placement in an RRC for an entire term, for the reason that such placement does not constitute imprisonment. *Id.* In the light of the above-referenced opinion, the BOP, on December 20, 2002, changed its policy, by limiting an inmate's eligibility for placement in an RRC to the shorter of either six months or the final ten percent of the inmate's sentence. *Id.* Subsequently, that policy was invalidated by the First and Eighth Circuits, which found the policy failed to recognize the BOP's discretion to transfer inmates at any time to an RRC. *Id.* In response, the BOP decided to "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." *Id.* (quoting 69 Fed. Reg. 51213). In 2005, that BOP rule was codified at 28 C.F.R. §§ 570.20 and 570.21. *Id.*
>
> On April 9, 2008, the Second Chance Act was signed into law, authorizing the BOP to consider placing inmates in an RRC for up to the final twelve months of their sentence. 18 U.S.C. § 3624. On September 4, 2008, the Ninth Circuit decided *Rodriguez*, *see supra*, holding the rules published by the BOP at 28 C.F.R. §§ 570.20 and 570.21 conflicted with the Congressional intent of 18 U.S.C. § 3621(b), which sets forth five factors the BOP must consider when making placement and transfer decisions. *See Rodriguez*, 541 F.3d at 1186. As determined by the Ninth Circuit, inmates must be considered for RRC placement based on the five factors of section 3621(b) and consequently, the BOP cannot reference 28 C.F.R. §§ 570.20 and 570.21 in considering an inmate for RRC placement. *Id.* at 1189.
>
> Plaintiff claims that "[o]n or about October 4, 2011, [she] was sentenced to a forty eight-month term of incarceration for the offense of security fraud." Dkt. 48 at 3. On December 19, 2011, she arrived at FCI-Dublin to complete her sentence. *Id.* Plaintiff claims that in August 2012, she was "classified by the [BOP] Central Monitoring Case ("CMC") as 'community custody.'" *Id.*
>
> Plaintiff claims that, according to the Second Chance Act, she would have become eligible for up to twelve-month pre-release placement in an RRC. *Id.* Plaintiff claims that she believed her eligibility to serve her sentence in an RRC started on or about June 2013. *Id.* Thus, Plaintiff sought to be transferred to an RRC on or about December 2012. *Id.* She claims that on December 3, 2012, her request to be transferred to an RRC "was denied within [Defendant's] authority." *Id.* at 3, 5.

Dkt. 50 at 2-4 (brackets added).

The Court also includes the complete background and analysis relating to the deliberate indifference claim at issue from its August 15, 2017 Order, which states as follows:

4

> The Eighth Amendment protects prisoners from inhumane methods of punishment and conditions of confinement. *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions-of-confinement claim, and only those deprivations denying the minimal, civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations and quotations omitted).
>
> A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *see Farmer v. Brennan,* 511 U.S. 825, 834 (9th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); and (2) the prison official must possess a sufficiently culpable state of mind, *see id.* (citing *Wilson,* 501 U.S. at 297). In prison-conditions cases, the necessary state of mind is one of "deliberate indifference," i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 834, 837. The official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See id.* at 837. In determining whether the objective component has been met, the Court must focus on discrete and essential human needs such as health, safety, food, and warmth. *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Courts may not find Eighth Amendment violations based on the "totality of conditions" at a prison, but instead should require evidence of specific conditions amounting deprivations of essential food, medical care, sanitation, and safety. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 n.3 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472, 481-84 (1995).
>
> Here, Plaintiff does not allege that she was denied the minimal, civilized measure of life's necessities. Nor does she provide evidence of deprivations of any of the aforementioned categories. Rather, she complains of being denied a particular prison transfer. Plaintiff cannot state an Eighth Amendment claim on these grounds, because the deprivation complained of is not sufficiently extreme. *Cf. Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983) (Prisoners have no constitutional right to incarceration in a particular institution.); *see also Tyler v. Coggins*, 2012 WL 285023, *2 (E.D. Cal. Jan. 31, 2012) (finding denial of requested RRC transfer did not constitute sufficiently serious deprivation to satisfy first element of Eighth Amendment claim); *Seidenfeld v. Rosales*, 2011 WL 835782, *2 (C.D. Cal. Jan. 20, 2011) (finding denial of entry into RDAP did not amount to adequate deprivation with regard to Eighth Amendment claim).
>
> Accordingly, Plaintiff's Eighth Amendment claim is DISMISSED WITH PREJUDICE, because refusing a requested RRC transfer cannot constitute a serious deprivation sufficient to satisfy the first element of Plaintiff's Eighth Amendment claim.

Dkt. 38 at 8-9.

5

As explained above, in its Order dated October 6, 2020, the Court directed Plaintiff to file her TAC "in which she may amend only her deliberate indifference claim, if she can correct the deficiencies as set forth above." Dkt. 71 at 3.

As mentioned above, in her TAC, Plaintiff raises her amended deliberate indifference claim, which is the only remaining claim in this action. *See* Dkt. 72 at 5, 9-14.

## III. DISCUSSION

### A. Review of TAC

#### 1. Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). *Pro se* pleadings must be liberally construed, however. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under *Bivens* and its progeny, a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor. *See Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) (42 U.S.C. § 1983 and *Bivens* actions are identical save for replacement of state actor under section 1983 by federal actor under *Bivens*).

#### 2. Analysis of Legal Claim from TAC

In her TAC, Plaintiff reasserts certain allegations from her SAC regarding her RRC placement decision, which began on December 3, 2012 with the first denial of her RRC placement request "without specific reason." *See* Dkt. 72 at 5, 11. On December 7, 2012, April 16, 2013 and April 18, 2013, she submitted requests for the reasons of the denial. *Id.* at 5. On May 15, 2013, Plaintiff was informed that she was denied RRC placement based on her failure to complete the

Residential Drug Abuse Treatment Program ("RDAP") and her refusal to participate in the Inmate Financial Responsibility Program ("IFRP"). *Id.* While she was "classified as 'low change for recidivism,'" she believes that Defendant "supervised others conducting RRC determination by creating false information and falsified recidivism risk level to exclude her from getting [the] 12-month RRC placement." *Id.* She specifically alleges that her refusal to participate in the IFRP, *see id.* at 8-9 (quoting Pl.'s Ex. 7), was wrongly factored into her RRC placement and that Defendant violated the Equal Protection Clause because other female inmates were allegedly treated differently than Plaintiff, *see id.* at 6-8.

Meanwhile, Plaintiff's new allegations relating to her Eighth Amendment deliberate indifference claim focus on her alleged cardiac condition while incarcerated and Defendant's "den[ial] of her eligibility to be released to a RRC to access necessary cardiac treatments." *Id.* at 5, 9-14. She alleges that a few months before her first RRC placement denial, "[o]n or about August 21, 2012, [her] heart failed." *Id.* at 9. She adds that she "suffered from worsening cardiac problem[s] and serious depression as her heart had failed on August 21, 2012 . . . [and she] was sent to hospital's emergency room [sic] by ambulance from the prison." *Id.* at 5; *see also id.* at 9-10. She further states that her "cardiac problems worsened without necessary medical attention since her emergency visit," and that Defendant "acted with deliberate indifference to [Plaintiff's] medical needs . . . [because] she was not taken to a cardiologist to proceed with a needed catheter ablation[3]." *Id.* at 9 (footnote added). Plaintiff alleges that following her emergency room visit, the "prison nurse prescribed her Diltiazem medication," which was the "wrong medication for [her] heart condition." *Id.*; *see also id.* at 14. Plaintiff states that she was "simply left untreated or had more than a year delay while she suffered from continual and ongoing pain and advancing physical deterioration." *Id.* at 9. On July 22, 2013, prison medical staff approved her cardiology

---

[3] Catheter ablation is a way to treat irregular heartbeats by destroying the tissue causing irregular heartbeats and creating scar tissue inside the heart, which will help the heartbeat stay in rhythm. *See* https://www.webmd.com/heart-disease/atrial-fibrillation/catheter-ablation-afib-atrial-fibrillation (last visited June 16, 2021).

7

consultation request. *See id.* at 9-10 (citing Pl.'s Ex. 3). Plaintiff claims that the approval for the cardiology consult was "pushed out by Defendant." *Id.* at 10; *see also id.* at 12-13. Plaintiff further alleges that Defendant allowed other inmates with other medical conditions to be placed in RRCs before Plaintiff. *See id*. According to Plaintiff, if Defendant had done a proper RRC analysis, she "would have arrived earlier at the RRC to receive proper treatment for her heart condition." *Id.* at 11; *see also id.* at 13. Plaintiff further alleges Defendant's deliberate indifference was evident from the "Warden's office['s]" August 2013 decision to "force[] [Plaintiff]" to do a janitorial job five days a week. *Id.* at 12. After "the army supervisor dismissed [Plaintiff] due to her critical heart condition and requested her to do a job change," the "Warden's office punished [Plaintiff] with two disciplinary charges." *Id.*; *see also id.* at 13-14. Plaintiff alleges that all of Defendant's actions were done in "bad faith," with "reckless disregard for a likelihood of harm," and in an "oppressive" fashion. *Id.* at 14.

Liberally construed, the Court finds that Plaintiff's new allegations in her TAC state a cognizable Eighth Amendment claim of deliberate indifference against Defendant. *See id.* at 5, 9-14.

### B. Defendant's Motion to Dismiss

#### 1. Legal Standard

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a FRCP 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

8

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### 2. Analysis

As mentioned, Defendant raises the following challenges to the TAC: (a) the Court lacks of subject matter jurisdiction over the Eighth Amendment claim because (1) Plaintiff has not exhausted her administrative remedies or, alternatively, (2) her claim is predicated on a contention that her RRC determination is improper; (b) Plaintiff's *Bivens* claim should be dismissed under FRCP 12(b)(6) because she has not and cannot plausibly state a claim for relief because (1) *Ziglar v. Abbasi*[4] does not permit Plaintiff's claim; or (2) Plaintiff has not and cannot raise a cognizable *Bivens* claim; and, lastly, (c) Defendant is entitled to qualified immunity for the conduct alleged. Each of these arguments shall be addressed below in turn.

#### a. Subject Matter Jurisdiction

##### 1) Based on Exhaustion of Administrative Remedies

Title 42 U.S.C. § 1997e provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under this section, an action must be dismissed unless the prisoner exhausted his or her available administrative remedies before he or she filed suit. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 122 S.

---

[4] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

9

Ct. 983, 992 (2002). Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." *Id.* at 988. The purposes of the exhaustion requirement include allowing the prison to take responsive action, filtering out frivolous cases, and creating an administrative record. *See id.*

The Court notes that under the law of the circuit, in the rare event that a failure to exhaust is clear on the face of the complaint, Defendant may move for dismissal under FRCP 12(b)(6) as opposed to the previous practice of moving under an unenumerated FRCP 12(b) motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (*overruling Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by defendant as unenumerated FRCP 12(b) motion). Otherwise if a failure to exhaust is not clear on the face of the complaint, Defendant must produce evidence proving failure to exhaust in a motion for summary judgment under FRCP 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendant is entitled to summary judgment under FRCP 56. *Id.* But if material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

Here, Defendant has filed a motion to dismiss under FRCP 12(b) on grounds that Plaintiff failed to exhaust her administrative remedies (*see* Dkt. 73), among other grounds, but the Court finds that such grounds for dismissal are more properly raised in a motion for summary judgment. For example, Defendant argues that "although Plaintiff filed 14 administrative complaints while in BOP custody, she failed to present any issue related to improper or untimely medical care." *Id.* at 19 (citing Vickers Decl. ¶ 4). However, in support of their argument, Defendant relies on a declaration from Paralegal Specialist Jennifer Vickers, who claims that she reviewed the aforementioned 14 administrative complaints and concludes that "none of [Plaintiff's] administrative remedies concerned allegations of inappropriate medical care or delayed treatment while in federal custody." Vickers Decl. ¶ 4. Ms. Vickers claims that she is "familiar with and

10

have access to BOP's various record-keeping systems, such as SENTRY, which is a database with inmate information about inmate discipline, sentence computation, and administrative remedy filings." *Id.*, ¶ 1. Nowhere does it indicate that Ms. Vickers's duties include direct handling or processing of administrative complaints, however. *See* Vickers Decl. ¶ 1. It seems that she "routinely obtain[s] and provide[s] BOP records for the U.S. Attorney's Office when requested to do so to assist with litigation filed against the BOP." *Id.* Attached to Ms. Vickers's declaration is a one-page list of Plaintiff's 14 administrative complaints. Vickers Decl., Ex. 1. The record does not include copies of these administrative complaints. *See id.* And without a more complete record, the Court cannot determine whether Plaintiff has failed to exhaust her administrative remedies. Therefore, the motion to dismiss as to this ground is DENIED without prejudice. Pursuant to the briefing schedule outlined below, Defendant may renew the arguments in support of dismissal (including the aforementioned arguments relating to Plaintiff's failure to exhaust her administrative remedies) by way of a motion for summary judgment, in light of the Ninth Circuit's recent ruling in *Albino*.

### 2) Based on Plaintiff's Claim for Deliberate Indifference as a Challenge to Her RRC Placement

Alternatively, Defendant argues that "[t]o the extent Plaintiff's claim for deliberate indifference is understood as a challenge to her RRC placement, this Court, additionally, and alternatively, lacks subject matter jurisdiction." Dkt. 73 at 19. The Court made such a finding in its August 15, 2017 Order when it initially dismissed Plaintiff's Eighth Amendment claim because "refusing a requested RRC transfer cannot constitute a serious deprivation sufficient to satisfy the first element of Plaintiff's Eighth Amendment claim." Dkt. 38 at 9. However, as explained above, Plaintiff was eventually allowed to amend her Eighth Amendment claim, and she now alleges that she suffered heart problems which were left untreated during the time Defendant denied her requested RRC transfer, and that Defendant's actions were done in "bad faith," with "reckless disregard for a likelihood of harm," and in an "oppressive" fashion. Dkt. 72 at 14. Thus, as the Court found above, the TAC sufficiently alleges a cognizable claim that Defendant

11

actions were deliberately indifferent to Plaintiff's serious medical needs. Therefore, the Court DENIES Defendant's aforementioned alternative argument in their motion to dismiss on the ground that the Court lacks subject matter jurisdiction over her Eighth Amendment claim.

### b. *Bivens* Claim

Next, Defendant argues that even if this Court believes it has jurisdiction, Plaintiff's *Bivens* claim is properly dismissed under FRCP 12(b)(6) because Plaintiff has not and cannot plausibly state a claim for relief. Dkt. 73 at 20-32.

### 1) Plaintiff's Claim Does Not Fall Under a New *Bivens* Context

The Supreme Court has held on three occasions that, even absent statutory authority, a private right of action for damages may be implied from the Constitution itself for constitutional violations by federal employees or their agents. *See Bivens*, 403 U.S. at 392-97 (Fourth Amendment unreasonable search and seizure); *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (Fifth Amendment Due Process Clause gender discrimination); *Carlson v. Green*, 446 U.S. 14, 17-19 (1980) (Eighth Amendment inadequate medical treatment). But "[t]hese three cases—*Bivens, Davis, and Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). The Court has made clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *id.* at 1857 (citation omitted), and will not be available if there are "'special factors' counselling hesitation in the absence of affirmative action by Congress," *id.* at 1848 (citation omitted). The Court has emphasized that "for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Courts are to engage in the following analysis when presented with plaintiffs seeking to proceed under *Bivens*: "First, courts must determine whether the plaintiff is seeking a *Bivens* remedy in a new context. If the answer to this question is no, then no further analysis is required. If the answer is yes, then the court must determine whether special factors counsel[] hesitation." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018) (internal quotation marks, formatting, and

citations omitted).

Here, the parties first dispute whether Plaintiff's Eighth Amendment claim presents a new context under *Abbasi*. Defendant argues that Plaintiff's Eighth Amendment claims are "distinct from those in *Carlson* whether the care received in a critical health emergency led to the plaintiff's death." Dkt. 73 at 22. Meanwhile, Plaintiff claims that "Defendant misunderstands both *Abbasi* and [her] claim" and that "[her] amended complaint is nothing but deliberate indifferent to a prisoner's serious medical needs in violation of the Eighth Amendment." Dkt. 77 at 3.

As noted above, in 1980 the Supreme Court recognized a *Bivens* damages remedy for Eighth Amendment inadequate medical treatment claims, which is the essence of Plaintiff's claim in the instant matter. *See Carlson*, 446 U.S. at 17-19. Therefore, Plaintiff's claim for an Eighth Amendment violation does not fall under a new *Bivens* context. Accordingly, the Court need not proceed to the special factors analysis under *Abbasi*. *See Lanuza*, 899 F.3d at 1023. Therefore, the Court DENIES the motion to dismiss on the ground that *Abbasi* does not permit Plaintiff's claim.

## 2) Sufficiency of the Pleadings

As explained above, to state a claim under *Bivens* and its progeny, a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor. *See Van Strum*, 940 F.2d at 409. With respect to supervisory liability, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677 (finding under *Twombly* and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations). *Bivens* liability requires proof of direct personal responsibility. *See Pellegrino v. United States*, 73 F.3d 934, 936 (9th Cir. 1996). A theory of respondent superior is not applicable

13

in a *Bivens* action. *See id.*; *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). *Bivens* liability may be imposed, however, when a supervisor participated or acquiesced in the alleged constitutional deprivations. *See Jasinski v. Adams*, 781 F.2d 843, 848 (11th Cir. 1986).

The Eighth Amendment protects prisoners from inhumane conditions of confinement. *Farmer*, 511 U.S. at 832. In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his or her "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation omitted). To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104. To satisfy the subjective element, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Thus, the official must have a "sufficiently culpable state of mind," *id.* at 834, and it is not enough to show that an official should have identified a risk if he in fact did not, *see id.* at 837-38; *see also id.* at 844 ("[I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety.").

There is no question that it is clearly established that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment, *see Estelle*, 429 U.S. at 104, and Defendant does not argue otherwise, *see* Dkt. 73 at 27-32. Instead, Defendant asserts that the TAC fails to include sufficient non-conclusory allegations that Defendant's actions in his individual capacity led to Plaintiff's alleged harm. *Id.* at 29. Meanwhile, Plaintiff counters that her allegations show that Defendant "had knowledge of [Plaintiff's] illness and showed deliberate indifference to [her] serious medical needs" when "Defendant canceled her cardiologist appointment, forced her to a new job assignment posing a

14

great risk to a cardiovascular disease patient." Dkt. 77 at 4. Plaintiff adds that "Defendant further punished [Plaintiff] with two disciplinary charges when [she] reported her heart condition to her supervisor on duty, and that Defendant "also denied her early release request pursuant to 18 U.S.C. § 3624(c) . . . [and] denying her the length of time she needed at a RRC to seek medical help." *Id.* at 4-5 (citing Pl.'s Ex. 1). Again, as the Court has already found above, these allegations state a cognizable claim for deliberate indifference in violation of the Eighth Amendment. Defendant's contrary arguments are unpersuasive, particularly at the pleading stage. Therefore, at this time, Plaintiff has alleged enough for her case to proceed, and the Court DENIES Defendant's motion to dismiss on the ground that Plaintiff has failed to raise a cognizable *Bivens* claim.

### c. Qualified Immunity

Federal officials are entitled to a qualified immunity defense whether they are facing claims under *Bivens* or Section 1983. *See Johnson v. Fankell*, 520 U.S. 911, 914-15 (1997). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is particularly amenable to summary judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

To determine whether an official is qualifiedly immune from suit, courts engage in the two-step analysis set forth in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). *See Pearson*, 555 U.S. at 236 (determining that the sequence set forth in *Saucier* is not mandatory and that courts can exercise their discretion to proceed in the order appropriate for a particular case). The first, but no longer threshold, question is, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201; *see Pearson*, 555 U.S. at 236. If the answer is no, the inquiry ends. *Id.* The second

15

question is "whether the right was clearly established," an analysis that "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) (internal quotation marks and citation omitted).

Here, Plaintiff has adequately alleged a cognizable Eighth Amendment claim against Defendant. During the time period of the alleged acts, it was clearly established that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle*, 429 U.S. at 104. The question, however, of whether any of Defendant could reasonably have believed that his conduct was lawful is more properly resolved on a motion for summary judgment, when Defendant is entitled to present evidence on his behalf and the Court may properly consider such evidence. *See, e.g., Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (affirming the district court's denial of a dismissal motion on grounds of qualified immunity because the court's review is confined only to the contents of the complaint). Thus, for the purposes of the instant motion, the Court cannot resolve the issue of whether Defendant is entitled to qualified immunity as to Plaintiff's claim at the pleading stage. Therefore, the Court DENIES Defendant's motion to dismiss on the ground that he is entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The Court finds Plaintiff's allegations in her TAC state a cognizable Eighth Amendment deliberate indifference claim.

2. Defendant's motion to dismiss is DENIED without prejudice. Dkt. 73. Defendant may file a motion for summary judgment, if appropriate, **which addresses the Court's concerns above, including supporting any exhaustion arguments with copies of Plaintiff's grievances**

16

**and a declaration from an individual who handles and processes grievances at the prison**, or he may file a motion for summary judgment on the merits, as set forth below.

      a. No later than **twenty-eight (28) days** from the date of this Order, Defendant may renew the arguments in support of dismissal by way of a motion for summary judgment.

      b. Plaintiff shall file any opposition to the aforementioned Defendant's motion within **twenty-eight (28) days** of the date the motion is filed.

      c. Defendant shall file a reply within **fourteen (14) days** of the date the opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

Defendant is reminded that a motion for summary judgment also must be accompanied by a *Rand*[5] notice so that Plaintiff will have fair, timely and adequate notice of what is required of her in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment).

3. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

4. Upon a showing of good cause, requests for a reasonable extension of time will be granted provided they are filed on or before the deadline they seek to extend.

5. Plaintiff's "Motion to Strike Defendant's Motion to Dismiss as Untimely" is DENIED as moot. Dkt. 74.

---

[5] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

17

6. This Order terminates Docket Nos. 73 and 74.

IT IS SO ORDERED.

Dated: July 12, 2021

_____
JUDGE YVONNE GONZALEZ ROGERS
United States District Judge